THE STATE *ex rel.* ST. LOUIS, KEOKUK & NORTHWESTERN RAILWAY COMPANY *et al.* v. WITHROW, *Judge.*

In Banc, March 17, 1896.

1. **Special Juries, Manner of Summoning:** STATUTE: CONSTRUCTION.   The act of March 17, 1885 (R. S. 1889, p. 2169, sec. 29), authorizing special juries, provides that other designated sections of the act relating to the summoning of common juries shall apply to the summoning of special juries, but the section directing that com-

State ex rel. v. Withrow.

mon juries shall be drawn from a wheel was not included among the sections so designated; such omission to include the last named section should be construed as an expression of legislative intent that special juries should not be drawn from the wheel in the same manner as common juries.

2. ———: ———: ———: EXCLUSION BY IMPLICATION. The specific mention of eight sections of an act as applicable to the summoning of special juries will justify the exclusion of a section of the same act not so mentioned, under the rule of construction that "affirmative specification excludes implication."

3. Judicial Notice: CENSUS: POPULATION OF CITY. An act applicable to cities of over three hundred thousand inhabitants will be held to apply to the city of St. Louis, as courts will take judicial notice of the fact that it is the only city in the state having that population.

4. Special Juries: STATUTES: REVISION: CONSTRUCTION BY COURT. The acceptance by the legislature of a statute providing for summoning special juries and the reincorporation of it into a revision of the statutes, where such statute had been construed to be mandatory upon the trial court, will be held to have been adopted with the interpretation previously given it by the courts.

5. ———: ADOPTION OF TERM: PRESUMPTION. Special juries were authorized at common law and were nominated and selected by the proper officer, by the exercise of judgment and discretion, and were not drawn by lot or chance as in the case of common juries; and the adoption of the term "special jury" by the legislature will be presumed to have been with the full understanding of the meaning, force, and effect it had acquired at common law.

6. Constitution: TRIAL BY JURY. The declaration in the bill of rights (Constitution of Missouri, art. 2, sec. 28) "that the right of trial by jury as heretofore enjoyed shall remain inviolate," means that all the substantial incidents and consequences which pertained to the right of trial by jury at common law are beyond the reach of hostile legislation and are preserved to their full extent, as then enjoyed.

7. Practice: SPECIAL JURIES: RULE OF COURT IN VIOLATION OF STATUTE. Rule 37 of the St. Louis circuit court providing that special juries shall be drawn from the wheel in the same manner as ordinary juries is in contravention of the statute authorizing the ordering of special juries and is invalid.

8. ———: ———: ———. The authority to make rules, given the circuit court of St. Louis, by the constitution (art. 6, sec. 27) does not empower it to direct by rule that special juries shall be drawn from the jury wheel, where such rule is opposed to the statute authorizing special juries; and this is true notwithstanding the statute (R. S. 1889, p. 2169, sec. 29) provides that special juries shall be selected by the jury commissioner as directed by the court.

9. ——: ——: ——. This power thus conferred on the circuit court of the city of St. Louis, by section 27 aforesaid, was only intended to confer authority on general term to make such rules as would secure a uniformity of rules in the several divisions of the St· Louis circuit court. This was the sole design of that section.

10. ——: INVALID RULE OF COURT: PROHIBITION. Prohibition will lie to prevent the enforcement of a rule of an inferior court which it had no power to adopt.

BARCLAY, J., dissenting.

*Prohibition.*

PEREMPTORY WRIT AWARDED.

APPLICATION for prohibition against James E. Withrow, one of the judges of the circuit court of the city of St. Louis, on the ground that the Knapp–Stout & Co. Company had applied for a special jury in a certain condemnation proceeding wherein the said St. Louis, etc., Railway Company was plaintiff and the Knapp-Stout Company was defendant, and that the respondent judge had denied such application except in a manner as qualified by a rule of court, which is claimed to be in violation of the statute in such cases made and provided. Both parties to the condemnation proceeding are relators in the present one. The petition for the writ, omitting caption, is the following:

"Now at this day come the St. Louis, Keokuk & Northwestern Railway Company, plaintiff, and the Knapp-Stout & Co. Company, defendant, who respectfully represent to the supreme court of the state of Missouri and give said court here to understand and be informed that there is now pending in the circuit court of the city of St. Louis, and in division number three thereof, whereof the Honorable James E. Withrow is the presiding judge therein, a certain cause instituted by the St. Louis, Keokuk & Northwestern Railway Company, plaintiff, *v.* The Knapp–Stout & Co. Company, defendant, the object and purpose of which is to condemn for railroad purposes, for the use of the plaintiff, a tract of

land claimed to be of great value by the said defend-
ant, in the city of St. Louis and state of Missouri,
belonging to the defendant, The Knapp–Stout & Co.
Company.

"Your petitioners further represent and show to
the court, that said cause was set for trial in said divi-
sion number three of the said circuit court of the city
of St. Louis, on the fourteenth day of October, 1895,
and that on the seventh day of October, 1895, the same
being more than three days before the day set for the
trial of said cause, the defendant in said suit, the said
Knapp–Stout & Co. Company, in pursuance of section
29 of article 21 of the appendix of the Revised Statutes of
1889, and the laws of this state, made request of said
court, and of the said James E. Withrow, judge thereof,
for a special jury; that in pursuance of said request,
the said James E. Withrow, judge as aforesaid, made
the following order:

" 'The court, having considered the defendant's
application for a special jury for the trial of this cause,
doth grant the same and doth order said defendant to
deposit forthwith $75 with the clerk of this court; and
from time to time such further sum as may be required
to meet all expenses hereunder.

" 'And the court doth direct the jury commis-
sioner of the city of St. Louis to draw and furnish to
the sheriff of the city of St. Louis, the names of forty-
five good and lawful men, and said sheriff is ordered
to summon the persons so named to be and appear in
room 3 of this court on Monday, October 14, 1895, at
10 o'clock A. M., then and there to serve as special
jurors until discharged by the court.'

"That in pursuance of said order, the jury com-
missioner delivered to the sheriff of the city of St.
Louis the names of forty-five persons to be summoned
as jurors from whom a jury of twelve men was to be

selected for the trial of said cause; that the persons whose names were furnished as aforesaid, were duly summoned by the sheriff aforesaid; that when said cause was called for trial in said court, the respondent herein, the said James E. Withrow, judge thereof, announced from the bench, that the parties to said cause would be required to select a jury for the trial thereof, in accordance with the following rule, which, said judge announced, had been adopted by all the judges of the circuit court of the city of St. Louis sitting in general term, to wit:

" 'RULE 37.

" '1.   When a special jury is ordered, the court making the order will designate therein the number of jurors to be drawn, not less than forty nor more than fifty, and thereupon the jury commissioner shall draw the number so designated from the jury wheel in the same manner as jurors for ordinary service are drawn, and shall furnish a list of the names so drawn to the sheriff to be summoned, and shall also furnish four other lists, two for the court, one for the plaintiff, and one for the defendant.

" '2.   On the day of the return of the special venire, after the sheriff, on order of the court, shall have called the list and ascertained who of them are present in court, the lists for the parties will be given them or their attorneys, showing those jurors who have answered the call; then when the trial is to begin, all the jurors of that venire present, except such as may have been excused by the court, will be called into the box to be questioned of their *voir dire*, and the court will hear and determine all challenges for cause, if any, and purge the list of the disqualified; then from the list so purged, the plaintiff and defendant, or their attorneys respectively, will select eighteen jurors, to wit, nine each; this selection will be made as fol-

lows: the plaintiff will mark on the list nine names, then the defendant will mark nine names; this selection will be so conducted that the jurors selected will not know by whom they are chosen; from this array of eighteen jurors so selected, each side will strike off three names, and the remaining twelve will be the jury to try the cause; should either party decline to participate in the selecting or striking off the names of jurors as above prescribed, the sheriff will perform that duty for him, and should both sides decline the sheriff will do so for both.

" '3. If, after the list has been purged, as provided in paragraph 2, *supra*, there should remain less than twenty-seven names of qualified jurors from which the eighteen are to be selected as above prescribed, the court will postpone the trial to a convenient time later, and order an additional number of jurors, who will be drawn, summoned, and selected in like manner as above provided, so as to bring the number of qualified jurors from whom the array of eighteen are to be selected up to at least twenty-seven.'

"Thereupon the relators herein, the said St. Louis, Keokuk & Northwestern Railway Company, plaintiff, and the said Knapp–Stout & Co. Company, defendant, filed their respective motions to vacate and annul the order so made as aforesaid by the said James E. Withrow, judge, requiring the jury commissioner to furnish the names of forty-five persons to the sheriff of said court as jurors in said cause, which said motions were, by said court, overruled.

"Thereupon the said St. Louis, Keokuk & Northwestern Railway Company, plaintiff as aforesaid, and the Knapp–Stout & Co. Company, defendant as aforesaid, filed their several and respective motions to quash the said panel of jurors, for the reason that the same had not been selected in pursuance of any statute

or valid rule of court, authorizing such selection, which said several motions were, by the said James E. Withrow, judge as aforesaid, overruled and disallowed.

"And thereupon, the said James E. Withrow, judge, announced from the bench, that your relators would in accordance with the rule hereinbefore set out, each be required to select nine persons from the list of names so returned by the sheriff as aforesaid, for the purpose of making a panel of eighteen from which to make their peremptory challenges of three each.

"And thereupon the relators, the said St. Louis, Keokuk & Northwestern Railway Company, and the said Knapp-Stout & Co. Company, declined to proceed further in the selection of a jury for the trial of said cause in which they are respectively plaintiff and defendant, in accordance with the requirements of the said judge, respondent herein, and the said rule so adopted, as aforesaid by the circuit court sitting in general term, for the reason that the same were without authority of law, and in violation of the constitution and statutes of this state.

"Your petitioners further show to this court, that said cause is still pending in the circuit court, and has been passed until Monday, the twenty-first day of this month, and at which time said jurors, illegally selected as aforesaid, have been ordered to return for further proceedings therein, and said respondent, James E. Withrow, judge as aforesaid, has announced his determination to enforce said rules and require the relators herein to select a jury in the said cause, in conformity thereto. Your petitioners herewith exhibit to this court an exemplification under the seal of the said circuit court, and under the hand of the clerk thereof, of the record and proceedings had in the circuit court in said cause, as to the matters stated in this petition.

"Your petitioners further state that the action of the said respondent, and the action proposed to be taken by him in the selection of a jury for the trial of the cause to which the relators herein are parties, are in excess of the jurisdiction and authority of the said circuit court.

"Your petitioners would further state that said cause is one of great moment, both to plaintiff and defendant, and involves, according to the contention of defendant, property of great value and damages in a very large sum; that the witnesses in said cause are numerous, and many of them reside at a considerable distance from the city of St. Louis, and can only be made properly available to the respective parties for whom they are witnesses by being personally presented in court; that the trial of said cause, though conducted with the utmost expedition, will, in all probability, occupy a period of from ten days to two weeks; that it is therefore of vast importance, and in the interest of a speedy determination of this pending litigation that the same shall be legally and properly conducted, and that the proposed action of the respondent, James E. Withrow, which is in excess of his jurisdiction and authority as judge, as aforesaid, will, if carried into effect, invalidate and render useless the trial of said cause, and undoubtedly cause loss and hardship to your petitioners.

"Whereupon your petitioners imploring the aid of this honorable court, pray to be relieved, and that they may have the state's writ of prohibition directed to the said James E. Withrow, judge of the said St. Louis circuit court, to prohibit him from enforcing the rule hereinbefore set out, as being without authority of law, and the attempted exercise of legislative power by the said court and a repeal of the statutes of this state

in relation to the selection of juries, and a substitution of a rule of court in lieu of said statutes.

"J. H. DRABELLE and E. S. ROBERT,
"For the plaintiff, the St. L., K. & N. W. R. R. Co.
"WARWICK HOUGH, ROWELL & FERRISS,
"For the Knapp–Stout & Co. Company."

Respondent in his return to the rule to show cause why the writ should not go, admits the facts set forth in the petition, and for further return says:

"That the rule was unanimously adopted by the judges of said court in general term by authority of section 27, article 4, of the constitution of Missouri authorizing them to make rules, and of section 29 of article 21 of the appendix to the Revised Statutes of 1889 directing that special juries shall be selected by the jury commissioner in the manner directed by the court, which provision of the statute is found on page 2160, Revised Statutes of 1889.

"That it was formulated and adopted by said judges as the result of their long experience in the practical operation of the special jury law applicable to the eighth judicial circuit.

"That the same is a valid exercise of judicial power under the constitution and laws of this state and is binding upon him and he deems it to be his duty to enforce the same unless prohibited therefrom by this honorable court.

"JAMES E. WITHROW,
"Judge of the Circuit Court for the Eighth Judicial Circuit."

*J. H. Drabelle, E. S. Robert, Warwick Hough, Warwick M. Hough,* and *Rowell & Ferriss* for relators.

(1) The legislation as to the juries applicable to the city of St. Louis. Jury Law for St. Louis, Sess.

Acts, 1879, p. 28; General Law for Special. Juries, R. S. 1879, sec. 2802; Special Jury Law for St. Louis, Sess. Acts, 1885, 74. (2) A special jury is one selected on the basis of superior intelligence. 3 Black. Com. 357; 2 Tidd's Pr. 788; Black's Law Dict. 1111; *King v. Wooler*, 1 Barn. & Ald. 193; *Fairman v. Jones*, 1 Chitty Rep. 85; *Hall v. Perott*, Bald. (U. S. C. C., Penn.) 123; *People v. Tweed*, 50 How. Pr. 262; *Railroad v. Clark*, 23 Mich. 519; *Jackson v. Pool*, 19 S. W. Rep. (Tenn.) 325; 2 Abbott's Law Dict., p. 508. Special juries as a matter of course in other states. R. S. Ohio (1880), 5185; R. S. Del. (1874), chap. 109; Ark. Dig. (1874), chap. 109, sec. 6; Code, Georgia (1873), 3932; K. C. Iowa, 2778; Code, Ala. (1876), 3018. (3) Our legislation and practice requires that a special jury should be selected on the basis of superior intelligence. Con. 1875, art. 2, sec. 28; R. S. 1854, chap. 91; R. S. 1885, chap. 86; R. S. 1865, chap. 146; R. S. 1879, sec. 2802, 2784, 2785; Sess. Acts, 1885, p. 74; R. S. 1889, p. 2169, sec. 29. (4) The statute in regard to special juries does not expressly define their qualifications and the rules of the common law with reference to them should prevail, and the rule of the St. Louis circuit court being in conflict with the common law rules must fall. R. S. 1889, sec. 6561. No one knows when special juries were first introduced in the administration of justice in England. That they were introduced "for the better administration of justice, and for securing the nomination of jurors duly qualified in all respects for their important office," and that the practice is a very ancient one, is conceded (*King v. Edmonds*, 4 Barn. & Ald. 477; Forsyth, History of Trial by Jury, 173). *King v. Perry*, 5 D. & E. 463. At common law the qualification of a common juror was that he must be a freeholder. 5 Bacon's Abridgment, 348. Blackstone defines special jurors to have been more than

"ordinary freeholders"—the officer selected "48 princi-
pal freeholders." *Rex v. Wooler*, 1 Barn. & Ald. 193;
Duncombe on Juries, 90; *Philpot v. Feeler*, 2 Croke's
Rep. 672; 3 Black. Com. 357; 2 Tidd's Prac. 788.

*J. E. McKeighan* and *Martin L. Clardy* also for
relators.

The lawmakers, in providing for special juries,
recognized the difference in the qualifications of persons
subject to jury service, and Judge Withrow observed
it in making the order for a special jury in this case.
It is admitted that section 29 of the act of 1885 and
section 6069 of the general law are *in pari materia* and
should be taken together as one law. They relate to
the same general subject, and they contain no incon-
sistent provisions. It will not be denied that "either
party to a suit pending in a court of record has the
absolute right to a special venire upon complying with
the requirements of the statute." *Vesterling v. Brew-
ing Co.*, 15 Mo. App. 127. "When a motion is made
for a special venire three days before the trial, the trial
court has no discretion to refuse it, and it would be
error to do so." *State v. Leabo*, 89 Mo. 247; *State v.
Jones*, 61 Mo. 232; *Fulweiler v. St. Louis*, 61 Mo. 479.
But, while the right to a special jury is admitted, the
adoption of rule 37 is a virtual denial of the exercise
of such right. The jury commissioner has a duty to
perform when he is called on to furnish a special jury;
it is he, and not the court, who is to select and furnish
to the proper officer the names of persons to be sum-
moned. "*   *   * It becomes the strict duty of
the officers intrusted with the duty of selecting and
summoning, to see that the names, character, and
qualifications of the jurors are correctly ascertained."
13 Albany Law Journal, p. 126. We respectfully sub-
mit that the judges had no power to make rule 37,

because it is in contravention of the statute. A court of record has an inherent power, with a statute or without one, to make rules for the transaction and regulation of its business, but it can make no rule which is in conflict with the constitution or the law of the land. *Gormerly v. McGlynn*, 84 N. Y. 284. The fact that the judges have tried to make amends for denying the parties a special panel by allowing them some choice as between common jurors, does not relieve their rule from the vice of being in conflict with the statute.

SHERWOOD, J.—The foregoing pleadings supplemented by statutes to be presently quoted, tender the issue, and form the basis on which this cause is to be determined.

Section 29, referred to and relied on by respondent in his return as justifying and validating rule 37, is the following:

" In every city in the state of Missouri, having over one hundred thousand inhabitants, all courts of record in which juries are required shall have power, upon the application of either party, to order a special jury for the trial of any cause, if the application be made at least three days before the trial, and when ordered, the jury commissioner, as he may be directed by the court, shall select and furnish to the proper officer of said courts the names of the persons to be summoned for such special jury, and said officer shall summon them according to the order of the court, and make out and deliver to each party, or his attorney, a panel of the jury so summoned; but the costs of such special jury shall be paid by the party so applying, irrespective of the result, unless the judge presiding at the trial shall, at the close thereof, or within two days thereafter, certify that the costs of the special jury shall be taxed as other costs against the losing party.

The provisions contained in sections 17, 18, 19, 20, 21, 23, 24, and 25 of this act, in relation to the summoning and service of common jurors and to the duties and liabilities of persons in said sections respectively mentioned, and to the penalties in said sections respectively provided for in respect to common juries, shall, in like manner, be construed to apply also to the summoning and service of special juries, as by this section provided for." R. S. 1889, p. 2169.

As seen by the statement therein, the act which section 29 formed was passed March 17, 1885, and is now to be found 2 Revised Statutes, 1889, p. 2169, as well as on pages 74, 75, Laws, 1885. The sections referred to therein are sections to be found in the Laws of 1879, pages 28 to 37, approved April 11, 1879, which contain sections 1 to 29 inclusive, and the act of 1885 was amendatory of the act of 1879, and refers to some other sections of that act, which act is to be found in 2 Revised Statutes, 1889, pages 2160 to 2170 inclusive, substantially as enacted in 1879, with the exception of section 29 aforesaid.

The act of 1879 until amended by the act of 1885 aforesaid, related solely to *common* juries, providing, as it does, for a canvass of the city, and the ascertaining by personal inquiry, etc., every person qualified in the city for jury duty, save those who are otherwise excluded or excused by the act.

A clause in section 8 of the act designates who shall be enrolled: "And every male citizen of this state resident in such city, sober and intelligent, of good reputation, over twenty-one years of age, and not exempt from jury duty by the general laws of this state, or otherwise disqualified or excused as provided in this act, shall be deemed to be qualified for and subject to the performance of jury duty under the provisions hereof."

Section 16 of the act makes provision for drawing the names of those who have been enrolled from the wheel, a method, as will readily be seen by reference to that section, which wholly precludes any possibility of arrangement or selection of the names of those to be thus drawn.    This section, at the time of the enactment of the act of April 11, 1879, was *only* intended for the drawing of *common* juries.   No part of the act as it then stood having any reference or making any mention of *special* juries.   With matters in this posture,. the act of March 17, 1885, was passed.

It is specially noteworthy of section 29 of that act, heretofore quoted, that it makes a distinction *in terms* between a *special* jury and *common* jurors, and while it. retains certain specified sections used for the purpose of the "summoning and service of *common* jurors," yet it wholly and very significantly omits to mention or allude to section 16, *supra*, which is the one alone which describes and prescribes the method to be employed by the commissioner when he *draws* the names of *common* jurors from the *wheel*.    This omission, after such specific mention and enumeration of eight other sections of the same act, invites and justifies the application of the maxim *expressio unius*, etc., or affirmative specification excludes implication.    Dwarris on Stat. 605; *Maguire v. Savings Ass'n*, 62 Mo. 344; *State ex rel. v. Laughlin*, 73 Mo. 443; *Ex parte Snyder*, 64 Mo. 58; *State ex rel. v. Woodson*, 128 Mo. *loc. cit.* 514.

At the same session of the legislature at which the act of April 11, 1879, was passed, it being revising session, another act was passed which was a *general* law giving *all* parties the right to a special jury, upon certain conditions being complied with, which act still remains in force and is the following:

"Either party to a cause pending in the circuit court or court of common pleas or criminal court of

any county, and triable by a jury, shall be entitled, as of course, to an order for special venire on motion made therefor, three days before that on which the case is set for trial; but the cost of such special jury shall be paid by the party so applying, irrespective of the result, unless the judge presiding at the trial shall, at the close thereof, or within two days thereafter, certify that the case was one for the trial of which a special jury should have been ordered, in which case the costs of the special jury shall be taxed, as other costs, against the losing party. This section shall apply to cities having over one hundred thousand inhabitants, as fully as to all other parts of the state." R. S. 1879, sec. 2802.

This section just quoted is the same (so far as material to note) in the revision of 1889, section 6089, except that the number of inhabitants is raised to *three* hundred thousand. There can be no question that this section applies to the city of St. Louis, because we take judicial notice of the fact that that is the only city in this state having such population. *State ex rel. v. Herrmann*, 75 Mo. 340, and cases cited; *State ex rel. v. Wofford*, 121 Mo. 61.

It follows from the foregoing that section 2802, Revised Statutes, 1879, now section 6089, Revised Statutes, 1889, must be construed in connection with section 29, Revised Statutes, 1889, page 2169, and as forming part and parcel of the same law, and as being in *pari materia* (Sutherland, Stat. Con., secs. 284, 288), saying nothing about section 6089 making direct reference to cities of the class of St. Louis.

In our earlier statutes, Revised Statutes, 1835, 1845, 1855, and 1865, it appears to have been optional with the trial court whether an order for a special jury should go, but under statutory provisions existing from the revision of 1879, the party applying for such jury,

upon complying with the statutory conditions, is entitled thereto as a matter of right.

And so it has been ruled by this court when passing on section 2802, that if timely application be made under its provisions for a special jury, the trial court has *no discretion* to refuse such request. *State v. Leabo*, 89 Mo. 247.

Such was the adjudged state of the law when the revision of 1889 occurred, which incorporated therein all of the provisions of the act of April 11, 1879, touching common juries, together with the amendment made by the act of March 17, 1885, relating to special juries, as well as section 2802, Revised Statutes, 1879, now section 6089, which also relates to special juries over the whole state as well as to juries of that sort of cities of the population of St. Louis. And the legislature having received the statutes of this state in 1889, and reincorporated a section which it had been adjudged left a circuit court no discretion when asked for a special jury, it must be presumed that the legislature was familiar with that ruling, and, by retaining that section as it stood in the revision of 1879, intended that it should continue to bear the meaning given to it by this court; and by changing the number of inhabitants in cities to which it applied to "over three hundred thousand inhabitants" it will be presumed also that the legislature intended to embrace the city of St. Louis within the terms of the amended section as much so as if that city had been directly named.

*Special* juries as contradistinguished from *common* juries have received legislative recognition and sanction in this state from an early period of its history. Thus in Revised Statutes, 1835, appears this section: "Sec. 14. The court shall have power to order a special jury for the trial of any civil cause; in such case the sheriff shall summon eighteen jurors, according to the order of the

court, and make out and deliver to each party or his attorney, a list of the jury so summoned, and each party shall have the right to strike off three of the names on such list." R. S. 1835, p. 343. Such recognition and sanction have been repeated at every revision of our laws ever since, as witness: R. S. 1845, p. 628, sec. 14; 2 R. S. 1855, p. 912, sec. 24; Genl. Stat. 1865, p. 599, sec. 23; 1 R. S. 1879, sec. 2802; 2 R. S. 1889, sec. 6089; *Ib.*, p. 2169, sec. 29.

Special juries, it need scarcely be said, were familiar adjuncts and adjuvants in the administration of justice from the earliest period of the common law. This is but the assertion of what might almost be termed a *prehistoric legal truism*, since their origin is too remote in the mists of authority to be now successfully traced. *King v. Edmonds*, 4 Barn. & Ald., *loc. cit.* 476.

Blackstone says: "Special juries were originally introduced in trials at bar, when the causes were of too great nicety for the discussion of ordinary freeholders; or where the sheriff was suspected of partiality, though not upon such apparent cause as to warrant an exception to him. He is in such cases, upon motion in court and a rule granted thereupon, to attend the prothonotary or other proper officer with his freeholder's book; and the officer is to take indifferently forty-eight of the principal freeholders in the presence of the attorneys on both sides; who are each of them to strike off twelve, and the remaining twenty-four are returned upon the panel." 3 Com. *357.

In *King v. Edmonds, supra* (*loc. cit.* 486), ABBOTT, C. J., said: "It is the very object of a special jury to obtain the return of persons of a somewhat higher station in society, than those who are ordinarily summoned to attend as jurymen at *nisi prius*. And a similar practice has long prevailed, even in the execu-

tion of writs of inquiry of damages, before the sheriff; wherein a party obtains, on application, a rule of the court, in obedience to which the sheriff summons persons of a somewhat higher class than those by whom he is ordinarily attended. This object is accomplished in the mode open to the smallest portion of suspicion or objection, by adverting to the addition placed against the name. And we have no doubt that the officer has the power of nomination, and of nominating only from the higher classes according to the ancient practice, and that he acts wisely in doing so, unless there be some special reason for adopting a new and different course.''

In *King v. Wooler*, 1 Barn. & Ald. 193, when considering the topic under discussion, Lord ELLEN-BOROUGH said: ''The rule is directed against the mode of proceeding, and the conduct of the officer. As to the mode, it is said the juries are improperly and illegally struck; and as to the officer, he is charged with partiality. Can any man, who has heard the detail of the affidavits, say that there is a colour for any part of the application? As to the mode, is it a mode that has obtained to-day for the first time? on the contrary, has it not obtained from all times to which the practice of the Court can be traced? The rule itself is not modern, nor has its form been varied: it requires 'that the sheriff shall attend the coroner with the books or lists of persons qualified to serve on juries, and that he shall name thereout forty-eight good and sufficient men, of whom twelve shall be struck out on each side, and the remaining twenty-four returned to try the issue.' * * * Then as to the juries being struck illegally; is there any illegality in the officer rejecting some and substituting others? that will depend upon the fifteenth section of the statute 3 *g.* 2 *c.* 25, which enacts, 'That the Court may, on motion, appoint a jury to be struck for the trial of any issues in such manner as special

juries had been usually struck in trials at bar.' ° The question then is, In what manner, before the passing of this statute, special juries were struck upon trials at bar? Now it appears from *Lilly's Practical Register,* and from the Rule of Court, 8 *w.* 3, that it was the practice of the Court upon trials at bar to make a rule for the secondary to *name* the forty-eight; that was the form of the rule before the statute; it is authorized by the statute, and has continued to be the uniform practice of the Court to the present day; and the rule in this very instance, as in all others, directed the master to name the forty-eight. The officer, therefore, is to *nominate,* not to *copy,* nor to take the names in sequence as they stand upon the page; that would not accomplish the design of the legislature and the Court; that would not secure a *special* jury. The situations, habits, and education of men vary: he is to *nominate;* and the very word implies that he is to exercise a judgment upon the subject: the mode in which the coroner proceeded, was by putting his pen into the book, and taking the name nearest his pen, of the person coming within the description of a merchant; the law does not absolutely require that the jurors shall be merchants, but the practice certainly has been within the city of London to take such only as came within that description, and in counties, those who come within the description of esquires or persons of higher degree: that has been the mode in which the officers have at all times exercised their judgment as to the class from which special jurors are to be selected; and the conduct of the officer would have been liable to exception, if he had departed from that practice in this instance; but it is said that he has rejected a rag-merchant, and substituted in his place a wine-merchant. I am of opinion, that if he did this in the honest exercise of his judgment, with a view of obtaining competent special jurors, he did only

what was his duty; if he were even mistaken in this instance, he is not to blame, if this rag-merchant were of all men the most enlightened, and the best informed, and the master had taken another in his place less competent, it was an error in judgment, but no crime; I, however, think that the officer, in rejecting the rag-merchant, exercised a sound discretion; for though the individual might possibly be a person of the best education and greatest intelligence, yet his description does not certainly denote that class of persons, where those qualities are generally found; the description of a wine-merchant, generally marks a person of a higher rank in society. Upon the question, therefore, of legality, I am of opinion, that the coroner had a right to select fairly and honestly with a view to attain the object of the rule, persons who in his judgment, were, from their better *education and superior intelligence,* calculated to decide upon questions of difficulty.''

See, also, to the same effect, 2 Tidd's Pr., 788; Black's Law Dict., 1111; Thomp. & Mer. on Juries, secs. 12 and 13; 12 Am. and Eng. Encyclopedia of Law, 320.

Our legislature, by adopting as it did, the term *"special jury"* must be presumed to have done so, with a full understanding of the meaning, force and effect which that expression had acquired during its long sojourn at common law. And section 28 of our bill of rights declares that ''the right of trial by jury, as heretofore enjoyed, shall remain inviolate,'' which means that all the substantial incidents and consequences which pertained to the right of trial by jury are beyond the reach of hostile legislation, and are preserved in their ancient substantial extent as existing at common law. Cooley, Const. Lim. [6 Ed.], 389, 504; *Copp v. Henniker,* 55 N. H. 179; *Work v. State,* 2 Ohio St. 299; *Greene v. Briggs,* 1 Curt. C. C. 311;

*Railroad v. Story,* 96 Mo. *loc. cit.* 621; *East Kingston v. Towle,* 48 N. H. 64; *People ex rel. v. Justices,* 74 N. Y. 406.

We are thus brought to consider rule 37, pleaded by respondent. We need not say much on this point, since it is too plain for argument that that rule *abrogates* the *statute,* and while seemingly it endeavors to carry it into execution, really evades its provisions by causing such a course to be pursued, and such a method of procedure taken, as leads to the *same result* as if the applicant had applied in the first instance for a *common* jury.

History is said to repeat itself, and this incident forcibly recalls something which affords a striking parallel to the operation of rule 37: The English judges had been accustomed, for a long period, to treat bequests to a "family" as presumptively intended for the heir of such family, and in *Wright v. Atkyns,* 1 Turn. & Russ, 143, Lord ELDON, when speaking of the English rule of construction just noticed, whereby heir at law and "my family" were held convertible terms, says: "The court, in its anxiety to find out the meaning of the testator, has found out, that *what he has said, has the same meaning as if he had said nothing at all.*"

Rule 37 operates in a similar way on the *statute;* it so construes it that, were it repealed to-morrow, a party desiring a *special* jury could have one by accepting a *common* jury *in lieu thereof* and this would be all he could get to-day. If this is the true meaning of sections 6089 and 29, *supra,* then the legislature has obviously expended in print a great deal of ineffectual verbiage.

There can be no question but that the term "special jury" under the authorities, bears with it as an inevitable concomitant, the idea of *selection,* of *choice,* of the exercise of *judgment* and *discretion,* by the

jury commissioner, *not* the *blind turning of a wheel!*
Indeed, as already shown, section 16, the only one
authorizing a resort to the wheel, is plainly eliminated
from the provisions of section 29.   It is true of that sec-
tion that "the jury commissioner *as he may be directed by
the court*, shall select and furnish to the proper officer of
said courts, the names of the persons to be selected for
such special jury, and said officer shall summon them
according to the order of the court," etc.   But certainly
those words in italics can not be allowed to defeat the
very end and object which gave origin to the section
itself.   Nor will they on any reasonable and fair con-
struction do so.   The judge under the provisions of
section 29 has no more power or rightful authority to
direct the jury commissioner to *disobey the law*, in
selecting a special jury, than he would have to direct
the sheriff to summon on a common jury those whom
the law declares to be incompetent or disqualified to
serve thereon.

But it is said in the return that section 27 of article
4 of the constitution of Missouri, authorized the judges
of the St. Louis circuit court *to make rules*.  It is true that
under the provisions of that section the judges of said
circuit court may sit in general term for the purpose of
making rules of court.   But that was simply intended
to confer power on general term to secure a uniformity
of rules in the several divisions of the circuit court.
That this was what was designed by that section is
apparent from two other considerations:   *First*, that
no such power was conferred on *other* courts to make
rules; and, *second*, the power merely *to make rules* is an
inherent power belonging to all courts of record,
because they *are* courts of record.   Works, Courts and
their Jurisdiction, p. 177.

So that if the framers of our constitution intended
simply to confer authority on the judges of the circuit

court of St. Louis *"to make rules"* such attempted conferring of a power already existent was a vain and useless thing, very strongly resemblant of an endeavor "To gild refined gold, to paint the lily," etc.

But it is beyond the power of any court to make rules or take action which come into collision with either the organic or statutory law. *Gormerly v. McGlynn*, 84 N. Y. 284; Works, Courts and their Jurisdiction, p. 177, and other cases there cited.

On frequent occasions this court has thus ruled the same point, to wit: In *State ex rel. Partridge v. Lewis*, 71 Mo. 170, the statute required all appeals taken from the St. Louis court of appeals to this court, to be taken within fifteen days after judgment rendered; but the statute allowed appeal bond to be filed *"during the term"* at which the judgment appealed from was rendered. Partridge, upon judgment being rendered against him in that court, took an appeal within the fifteen days, and during the term tendered his appeal bond, but the court of appeals refused to accept it because the appeal having been granted, that court had no further jurisdiction of the cause. This view was corrected by our writ of *mandamus*. So, also, in *State v. Underwood*, 75 Mo. 230, it was held that a rule of court which makes a change of venue case nontriable unless the transcript is filed at least fifteen days before the term, was null, because of being in conflict with section 1870, Revised Statutes, 1879. See, also, to the same effect: *State ex rel. v. Gideon*, 119 Mo. 94; *Calhoun v. Crawford*, 50 Mo. 458; *Purcell v. Railroad*, 50 Mo. 504; 4 Am. and Eng. Encyclopedia Law, 450, n. 7, and cases cited.

But one point remains to be considered, and that the method of relief resorted to by relators; as to which it is well settled law that such manner of redress as is prayed for by relators may be granted when the action of the lower court exhibits evidences of excess of

jurisdiction, as well as when exhibiting absolute absence of jurisdiction. *Appo v. People*, 20 N. Y. *loc. cit.* 541; Jac. Law Dict., tit. Prohibition; *Ward v. Kelsey*, 14 Abb. Pr., 106; *State v. Ridgell*, 2 Bailey (S. C.), 560; *People ex rel. v. Supervisors*, 47 Cal. 81; *People ex rel. v. Whitney, Ibid*, 584; 2 Spelling, Extr. Rel., sec. 1726, and cases cited; 1 *Ibid.*, sec. 626.

For the reasons aforesaid we award prohibition. BRACE, C. J., GANTT, MACFARLANE, BURGESS, and ROBINSON, JJ., concur; BARCLAY, J., dissents.

BARCLAY, J. (*dissenting*).—My view of this case was given in an opinion filed in the first division. Notwithstanding what has since been written by my learned brother who has expressed the judgment of the court in banc, my conclusion remains, with due respect, as announced in the divisional proceedings. So my former opinion, together with the suggestions of the St. Louis circuit judges accompanying it, will be filed along with this for publication in the official report.

But some observations occur in the learned opinion in banc which lead me to add to my former comment on the case.

1. The final judgment of the court places in the hands of the St. Louis jury commissioner the power to select the jury (when a special jury is ordered) and holds that the rule or order of the circuit court undertaking to direct the mode of that selection by lot is illegal and void.

That ruling, it appears to me, does not give sufficient force to the part of section 29 (R. S. 1889, p. 2169) which declares that the selection of a special jury by the commissioner shall be "according to the order of the court." If the court sees fit to order a special jury to be selected by the commissioner by drawing names by lot from the list of qualified jurors, the effect

of the order is to make the special jury merely one for the trial of the particular case. That is the undoubted effect of the course prescribed by law in some other parts of the state (Laws, 1891, p. 173, sec. 7), and it does not appear to be prohibited by the law applicable to St. Louis.

2. The statute furnishes the sole authority for a special jury. The right to a jury trial, which the constitution preserves, does not include the right to have a special jury as an essential feature of trial by jury at common law. So the rule of court should not be held invalid as infringing any constitutional right of the plaintiffs.

The body of the general common law was formally adopted as part of our jurisprudence in 1816; but only so far as "not contrary to the laws of this territory." 1 Terr. Laws, p. 436, ch. 154. Even at that day, jury trial was a cherished Missouri institution. The qualifications of jurors and mode of selection had been subjects of serious attention already.

The law of 1804 granted a trial by "jury of twelve good and lawful men" in criminal prosecutions, and "in all civil cases" if required. 1 Terr. Laws, p. 61, sec. 13. With slight modifications, the grant was repeated in other congressional and territorial acts applicable to the people of the territory now included in the state of Missouri. 1 Terr. Laws, p. 7, sec. 3; p. 89, sec. 1; p. 123, sec. 62; p. 307, sec. 4.

In 1808 an act of Louisiana territory provided an elaborate scheme for the selection of juries, one leading feature of which was that only payers of taxes (upon property rated at $100 or more) should be eligible as jurors. 1 Terr. Laws, p. 198, ch. 60. That property qualification was not only repealed in 1810 by the territorial legislature, but in a later act of congress (1812) for the government of Missouri territory that repeal

was clinched by the following section, the intent of which is by no means obscure:

"Sec. 11.  *And be it further enacted*,  That all free male white persons of the age of twenty-one years, who shall have resided one year in the said territory, and are not disqualified by any legal proceeding, shall be qualified to serve as grand or petit jurors in the courts of the said territory; and they shall, until the general assembly thereof shall otherwise direct, be selected in such manner as the said courts shall, respectively, prescribe, so as to be most conducive to an impartial trial, and least burthensome to the inhabitants of the said territory." 1 Terr. Laws, p. 12, sec. 11.

So the law of Missouri territory stood when the first constitution of the new state proclaimed "that the right of trial by jury shall remain inviolate" (art. 13, sec. 8). The right thus secured was the right of jury trial already enjoyed by the people whose representatives made that declaration. And although the common law may properly be considered in determining the nature of some of the historic features of jury trial (not covered by local legislation before Missouri had a constitution of her own) the common law qualifications of jurors did not become part of the jury system protected by the constitution, for the very plain reason that the local law had already dealt with, and defined, those qualifications. And as the mode of selecting jurors was also a topic treated by the local law, the common law, as to the right to a special jury, was not adopted as part of the Missouri trial by jury.

In the early days of this court it was called upon to consider what jury trial was meant by the first constitution, in a case wherein a jury had been demanded to try a summary proceeding on motion, depending on disputed facts. It was insisted that a jury trial was

not sanctioned in such a case by the common law; but the court replied:

"This doctrine would be good in England, and in this state, if it were not for a provision in our constitution, which says, the trial by jury shall remain inviolate; the meaning of which is, that with respect to facts, the trial shall be by twelve men, and they shall all and each of them be good and lawful men; they must have a good fame, possess integrity and intelligence; they must not be aliens, vagrants, outlaws, nor under conviction of crimes. They must all be under oath when they try a fact or cause; they must all agree in their verdict; and the right to have disputed facts tried by such a jury, and in such a manner is to remain inviolate." *Bank v. Anderson* (1822) 1 Mo. 244.

That opinion was written by Judge McGIRK to whom tradition imputes the authorship of the already mentioned act of 1816, introducing the common law as part of the law of the territory. Bay, Bench & Bar of Mo., p. 537.

The other judges of the court, at the time of the decision quoted, had both been members of the convention that ordained the first constitution of Missouri. It is likely, therefore, that those pioneers in our law knew, at least as well as any of their successors, the proper meaning of our earliest organic charter on the subject of jury trial; and, in announcing that not the English, but the Missouri, trial by jury was guarantied to our people, they probably made no mistake. Special juries had been known to our law, by name, before the adoption of the first constitution; but they were provided simply for particular cases to avoid a change of venue, and were to be drawn from a different county when an impartial jury could not be had in the county where the court was sitting. 1 Terr. Laws,

p. 276, sec. 18.   But the local law touching the qualifications and selection of jurors applied to all juries.

*Bank v. Anderson* was later approvingly cited in *Vaughn v. Scade* (1860) 30 Mo. 600.   There is a remark in the latter case, however, that the common law trial by jury was the one adopted in the bill of rights, although the decision also approves *Bank v. Anderson* which held that it was not so adopted.   Judge SCOTT probably intended to refer to the common law only for those essential features of jury trial that were not touched by Missouri law before the adoption of the first constitution, which was the substance of Judge McGIRK's ruling in the *Anderson* case.

But it is not necessary to re-argue the present case at length.   My dissent is respectfully recorded to the order for a prohibition.

DIVISION ONE.

OPINION.

BARCLAY, J.—This is an original application for a writ of prohibition to Judge Withrow, one of the judges of the circuit court in the city of St. Louis. The purpose is to prohibit him from enforcing a rule of court in regard to the selection and impanelment of special juries that may be ordered in that court.   Both parties to a cause pending in the division (or special term) over which Judge Withrow presides unite in the application for a prohibitory writ.

The facts are admitted.

The object of the action before Judge Withrow is to condemn for railroad purposes a strip of land in St. Louis.   The railway company is plaintiff, and the Knapp-Stout & Co. Company is defendant.   The defendant applied in due time "for a special jury."   The application was granted, upon a deposit of the required

sum to meet the expenses thereof.    The order further declared:

"And the court doth direct the jury commissioner of the city of St. Louis to draw and furnish to the sheriff of the city of St. Louis the names of 45 good and lawful men, and said sheriff is ordered to summon the persons so named to be and appear in room 3 of this court on Monday, October 14, 1895, at 10 o'clock a. m., then and there to serve as special jurors until discharged by the court."

Neither the application for the special jury nor the order allowing it contains any specification of qualifications of the jury, by class, trade, occupation, residence, or otherwise.

The case came on for a hearing.    The judge announced that the parties would be required to select a trial jury in accordance with rule 37 of the court, a copy of which the official reporter will please print along with this opinion.*

The 45 jurors had been duly summoned in accordance with the order, but both parties moved to vacate it, and to "quash the panel," because the order had required the jury commissioner to furnish the names of the jurors to the sheriff.    On various grounds both parties indicated objections to the rule mentioned, and to its enforcement in the condemnation case.    After overruling the objections, the judge adjourned the trial to a future day in order to allow the parties time to have the correctness of his action reviewed in the present proceeding, which was promptly brought.

The defendant judge, in response to the rule to show cause, after admitting the facts set forth in the application for a prohibition, made further return as follows:

*See pp. 504, 505, *ante*.

"That said rule was unanimously adopted by the judges of said court, in general term, by authority of section 27, art. 6, of the constitution of Missouri, authorizing them to make rules, and of section 29 of article 21, of the appendix to the Revised Statutes of 1889, directing that special juries shall be selected by the jury commissioner in the manner directed by the court, which provision of the statute is found on page 2160, Rev. St. 1889: that it was formulated and adopted by said judges as the result of their long experience in the practical operation of the special jury law applicable to the Eighth judicial circuit: that the · same is a valid exercise of judicial power under the constitution and laws of this state, and is binding upon him, and he deems it to be his duty to enforce the same unless prohibited therefrom by this honorable court."

In this state of the record, the case here has been argued by the plaintiffs, and submitted for decision, as upon an application to make the rule absolute.

The seven circuit judges of St. Louis, including Judge Withrow, have submitted printed suggestions indicating the grounds on which they saw proper to adopt rule 37. These suggestions will also be printed in reporting the case.* They present many practical reasons for the course taken by the judges.

1. Neither party questions the propriety of the use of prohibition to reach a prompt decision upon the validity of the rule of court. But that fact does not warrant us in ignoring all inquiry as to our jurisdiction to entertain the proceeding.

It is evident that either party to the case before Judge Withrow might except to the court's action in regard to the jury, let that cause go to judgment, and

*See. p. 542, *post*.

thereafter review the ruling by appeal or writ of error. But, on the other hand, a decision as to the correctness of the circuit ruling is said to involve a decision upon the power and authority of the court to proceed as indicated by the rule in dispute, and hence of its lawful authority to enforce the rule. The petitioners here insist that the circuit court has no authority to require the cause to be tried in the manner indicated by its orders and rulings already made.

Prohibition, undoubtedly, is applicable, legitimately, as well to keep a court within the orbit of its power in dealing with some phase of a case, as to prevent its taking cognizance of an action or proceeding which the court has no power to entertain at all. *State v. Ridgell* (1831) 2 Bailey 560; *Appo v. People* (1860) 20 N. Y. 531. Especially may the writ be used for the former purpose by a court invested with "general superintending control" over the circuit courts, as is the supreme court, according to our fundamental law. Const. 1875, art. 6, sec. 3.

A question of jurisdiction in respect of an incidental matter of procedure in a pending cause does not, ordinarily, form a basis for demanding, as matter of right, a writ of prohibition. If the court of which that writ is asked is of opinion that the remedy by appeal or writ of error is ample and adequate to correct an erroneous ruling on such a question, it may decline to interfere during the pendency of the original litigation. But if the mooted question involves an issue of jurisdiction in the trial court to act in the particular matter complained of, the superintending court has discretionary power to award the writ of prohibition to keep the court of first instance within the confines of its authority, where the circumstances justify the call for that remedy. In cases of the kind just described, the use of prohibition is truly discretionary,

when appeal or error would be also ultimately available.

The recent statute regulating proceedings in prohibition (Laws 1895, p. 95) does not change in this respect the preexisting law as to the proper occasions for the awarding of that writ.    It merely undertakes to prescribe certain rules of procedure to obtain it.

We shall not, however, pause further to inquire into the applicability of the remedy in this instance inasmuch as we are of opinion that no prohibition should be granted on the merits.    We are not entirely satisfied that it should be denied on the preliminary issue as to the appropriateness of the relief sought; so we have looked into the substance of the controversy.

2.    The chief complaint of plaintiffs in the case at bar is that the order by Judge Withrow did not direct any selection of the jurors, either by the jury commissioner or by the sheriff, or point out any qualifications which the special jurors should possess.    But plaintiffs also challenge the power of the court to require the panel for the case to be chosen in accordance with the thirty-seventh rule of the circuit court of the city of St. Louis.

The ordinary method of selecting jurors for service in St. Louis is pointed out by the law of 1879. Rev. St. 1889, p. 2160, art. 21.    That statute has been since amended in some particulars which need not be . specially noted, but one amendment is as follows:

"In every city in the state of Missouri having over one hundred thousand inhabitants, all courts of record in which juries are required shall have power, upon the application of either party, to order a special jury for the trial of any cause, if the application be made at least three days before the trial, and when ordered, the jury commissioner, as he may be directed by the court, shall select and furnish to the proper officer of said courts the names of the persons to be summoned for

such special jury, and said officer shall summon them according to the order of the court, and make out and deliver to each party, or his attorney, a panel of the jury so summoned; but the costs of such special jury shall be paid by the party so applying, irrespective of the result, unless the judge presiding at the trial shall, at the close thereof, or within two days thereafter, certify that the costs of the special jury shall be taxed as other costs against the losing party. The provisions contained in sections 17, 18, 19, 20, 21, 23, 24 and 25 of this act, in relation to the summoning and service of common jurors and to the duties and liabilities of persons in said sections respectively mentioned, and to the penalties in said sections respectively provided for in respect to common juries, shall, in like manner, be construed to apply also to the summoning and service of special juries, as by this section provided for." Laws 1885, p. 74; R. S. 1889, p. 2169, sec. 29.

The general provisions on this topic in the last revision of the statutes (1889) are these:

"Sec. 6089. *Special venire — how obtained and paid.*—Either party to a cause pending in the circuit court, or court of common pleas or criminal court of any county or city, and triable by a jury, shall be entitled, as of course, to an order for special venire on motion made therefor, three days before that on which the case is set for trial; but the cost of such special jury shall be paid by the party so applying, irrespective of the result, unless the judge presiding at the trial shall, at the close thereof, or within two days thereafter, certify that the case was one for the trial of which a special jury should have been ordered, in which case the costs of the special jury shall be taxed as other costs against the losing party. This section shall apply to cities having over three hundred thou-

sand inhabitants, as fully as to all other parts of the state."

It will not be needful in this case to consider any clash there may be between the terms of this section and of the act of 1885 quoted.

Turning, now, to the law regulating the circuit court in the city of St. Louis, we note that the present court was organized under a special statute of 1865 (Laws 1865-66, pp. 70-76; R. S. 1889, p. 2145), which has since been occasionally amended.

But in the original act of 1865 occurs the following passage, which has never been altered or repealed:

"In addition to the ordinary power of making rules conferred by the general law, the court may make all rules which its peculiar organization may, in its judgment, require, different from the ordinary course of practice, and necessary to facilitate the transaction of business therein. But all rules for the government of the court at special term shall be the same before each of the judges at such term." Laws 1865-66, p. 73, sec. 14; R. S. 1889, p. 2147, sec. 11.

In *State ex rel. v. Smith* (1869) 44 Mo. 112, the supreme court, in a unanimous opinion, by Judge WAGNER, held valid a rule of the St. Louis circuit court requiring bills of exceptions to be submitted there within five days, instead of within the term, as then allowed by the existing statute of the state.

The same view was taken of another rule of that court in regard to the mode and manner of applying for continuances (*Frederick v. Rice* (1870) 46 Mo. 24), and again in respect of the time for objecting to the form of questions in depositions (*Fox v. Webster*, 1870, 46 Mo. 181).

The same opinion of this power to make rules was also expressed by the court of appeals in *State ex rel. v.*

*Boyle* (1877) 3 Mo. App. 603; *State ex rel. v. Wickham*, 3 Mo. App. 604; and *State ex rel. v. Wickham* (1878) 5 Mo. App. 301.

The supreme court decisions already cited were rendered and published, and hence well known to the public, long before the adoption of the constitution of 1875. In that instrument we find the following language in regard to the St. Louis circuit court:

"Sec. 27. *Circuit Court of St. Louis County, etc.* The circuit court of St. Louis county shall be composed of five judges, and such additional number as the general assembly may from time to time provide. Each of said judges shall sit separately for the trial of causes and the transaction of business in special term. The judges of said circuit court may sit in general term, for the purpose of making rules of court, and for the transaction of such other business as may be provided by law, at such time as they may determine, but shall have no power to review any order, decision or proceeding of the court in special term."

This provision of the organic law is strongly confirmatory of the power already conceded to that circuit court by the statute and by the supreme court, in regard to declaring rules of practice.

There are many reasons for the grant and exercise of such authority, growing out of the peculiar formation and duties of the court, and of the needs of the people whom it chiefly serves in administering the law of the state.

The statutes and decisions already cited will suggest many such reasons to the careful reader, and more could be pointed out by reference to other statutes, imposing peculiar powers and duties on that court.

But, whatever the reasons therefor, "the power exists," as Judge WAGNER said, in one of the cases

above cited, and the constitution has expressly confirmed the grant.

The power, however, relates only to modes of procedure, and is limited in its application to cases wherein a rule of court might fairly be held to have a legitimate bearing towards facilitating the business of the court. Even so broad a power to make rules of practice could not justly or reasonably be held applicable to deprive a suitor in that court of any right conferred by the substantive, positive law of the state.

The limitations of the power need not be further discussed at this time.

Rule 37 is not in conflict with any law touching the mode of impaneling the jury. It conforms to the statute (section 6081) allowing each party to the action to challenge peremptorily three jurors, and it recognizes fully the statutory right of challenges for cause (section 6083). In matters of mere detail, it prescribes the mode of proceeding to bring the final jury into the box, but in so doing it does not clash with any command of the written law, and we think that it can not justly be held to go beyond the proper range of the power of the court to regulate its procedure.

We therefore hold that it is valid.

3. But, beyond the issue as to the mode of selecting the panel, by means of the legal machinery described in rule 37, lies the further inquiry as to the power of the court to order a special venire "of 45 good and lawful men," without other designation of qualifications. This power plaintiffs deny. Rule 37 does not touch this point. It opens with the words: "When a special jury is ordered," etc. It would be entirely practical, under that rule, and under the system of selecting jurors in St. Louis, established by the law of 1879, for the court to order, in a particular case, a jury of mechanics, bankers, merchants, or archi-

tects, and have their names drawn by lot by the jury commissioner. We do not mean, at this time, to imply whether such an order would be correct, for no such question is in judgment. But the rule of court quoted would not prevent the execution of such an order.

Under a former law regulating juries in St. Louis, before the separation of the city and county, a method of procedure was pointed out for promptly drawing jurors, the principle of which could be readily applied to the selection of a special jury, designated by occupation or residence, though drawn from the wheel by lot in the usual way. Laws 1857, p. 487, sec. 3.

In the case in view in the trial court there was no order for that sort of a special jury. The call was merely a special one, for 45 jurors, in the particular case, and we are expected to decide whether the court had authority to make such an order.

From an early date, in Missouri, there has been general legislation authorizing the use of special juries.

As early as 1845 the following section appeared in the statutes, slightly changing the law of 1835 on the same topic (R. S. 1835 [2 Ed.], p. 343, sec. 14).

"Sec. 14. All courts before whom juries are required, have the power to order a special jury of eighteen, for the trial of any civil cause, and, when ordered, the sheriff shall summon them according to the order of the court, and make out and deliver to each party, or his attorney, a panel of the jury so summoned." R. S. 1845, p. 628, sec. 14.

In the revision of 1855, the number of the special jury was increased to 24, and the section last quoted was substantially repeated, with that change. R. S. 1855, p. 912, sec. 24.

By the revision of 1865, the opening lines of the section were amended so as to read thus:

"All courts of record in which juries are required shall have the power to order a special jury of twenty-four," etc. The rest of the section was retained as last above written. R. S. 1865, p. 599, sec. 23.

In the statutes of 1879 (section 2802) was a section in all material respects the same as section 6089 of the revision of 1889, already quoted. In these revisions no requirement is found as to the number of a special jury, further than may be inferred from general remarks committing the subject or number of jurors to the discretion of the court. R. S. 1889, secs. 6084, 6087.

One of the old local laws regulating the selection of juries in St. Louis and in a few other counties refers to special juries as proper in certain circumstances. Laws 1850-51, p. 228, sec. 7.

In several reported cases in the supreme court, questions have arisen involving the powers and duties of the trial courts in regard to special juries.

In *Fine v. Schools* (1860) 30 Mo. 166, the St. Louis circuit court ordered a special venire for a jury to be summoned outside the city limits, and the order was sustained. That ruling was · afterward approved in *Rose v. St. Charles* (1872) 49 Mo. 509.

In *Union Sav. Ass'n v. Edwards* (1871) 47 Mo. 448, the supreme court was called upon to consider an exception to a special jury of "bankers, merchants, and manufacturers" (as recited in the record of the cause, though the precise terms of the order do not appear in the opinion). After referring to the statutory power authorizing an order for a special jury, to be summoned " according to the order of the court," Judge WAGNER, on behalf of all the judges, declared: "The special panel may be ordered in the discretion of the court."

It is noteworthy, in this connection, that the law

of 1885, already quoted, requires special juries in St. Louis to be selected and summoned by the jury commissioner and sheriff, according to the direction or order of the court. Do not those provisions imply that the court itself is invested with the discretion to determine what sort of special jury shall be summoned?

At no time in the history of the state have the trial courts in St. Louis been commanded, by any statute we have been able to discover, to direct the impanelment as special jurors of any particular class or kind of citizens from among those liable to general jury duty; nor have those courts been adjudged by any decision to be bound to order such a special jury. That subject has, so far, been left entirely to the judgment and discretion of the trial judge, as the cases above cited indicate.

The mode of selecting special juries, in vogue in England during the last century, is thus described by the great commentator on the English law:

" Special juries were originally introduced in trials at bar, when the causes were of too great nicety for the discussion of ordinary freeholders; or where the sheriff was suspected of partiality, though not upon such apparent cause as to warrant an exception to him. He is in such cases, upon motion in court and a rule granted thereupon, to attend the prothonotary or other proper officer with his freeholders' book; and the officer is to take indifferently forty-eight of the principal freeholders in the presence of the attorneys on both sides; who are each of them to strike off twelve, and the remaining twenty-four are returned upon the panel." 3 Bl. Com., *357.

It should be observed that such juries were ordered, under the common law system, not only on account of the difficulty of the cause, but also, in some instances,

to secure impartiality in the selection of the jury, irrespective of the nature of the action.    That is to say, they were ordered, under that system, at the discretion of the court.

The English law of a more recent period prescribes, with considerable particularity, the qualifications for special jurors, and provides for their selection by lot, unless the court, as it may, shall direct a different course.  Juries Act 1870 (33 & 34 Vict.) 77, secs. 6, 17.

In North Carolina, where such jurors may be selected by lot, that mode of choice has been commended as preferable to that of committing the matter to the choice of an executive officer of the court. *State v. Brogden* (1892) 111 N. C. 656, 16 S. E. Rep. 170; *State v. Whitson* (1892) 111 N. C. 695, 16 S. E. Rep. 332.  In Wisconsin, the designation of a jury by the trial court itself was held a constitutional application of judicial power over the subject of juries, in *Perry v. State* (1859) 9 Wis. 19.    While in our own state the naming of two jurors of such a panel by the judge himself was held a proper exercise of authority in *Barr v. City of Kansas* (1894) 121 Mo. 22, 25 S. W. Rep. 562.   In the last cited case it was also ruled that, in Kansas City, "special juries should be drawn from the wheel the same as juries ordered to serve generally for the term or some other stated period of time."

No law of this state has been pointed out which expressly or impliedly requires the court to order a special jury "of more than ordinary intelligence," or "of business men," or of any special class, at the instance of any party who chooses to apply for a special venire. It can not be possible, nor does the language of any designated law suggest, that any party to the most trivial suit may, by paying in advance certain costs, secure an "extra good" jury.  Section 6089 simply

purports to confer the right, "as of course, to an order for a special venire," on certain terms. And the law of 1885 quoted commands that, when a special jury is ordered, "the jury commissioner, as he may be directed by the court, shall select and furnish to the proper officer of said courts the names" of the special jury, who are then to be summoned "according to the order of the court," etc. R. S. 1889, p. 2169.

Granted that the word "select" is used to describe the action of the jury commissioner. It must also be remembered that the section from which we have just quoted is but part of a chapter or article regulating the selection of juries in large cities, including St. Louis. The rest of the law on that topic must be considered in attempting to reach a correct interpretation of the word "select" in the place where it is found in the act of 1885. All statutes on a given subject should be kept in view in interpreting any portion of them. The jury commissioner, in ascertaining the names of an ordinary jury, is not absolutely bound to place on any jury list every name drawn therefor from the wheel. If, for instance, it appears that he has drawn the names of persons whom the jury register shows to be dead, or to have removed permanently from the city, after their names were placed in the wheel, the commissioner may draw additional names to supply the deficiency. R. S. 1889, p. 2165, sec. 16.

Furthermore, the language of the law generally, in regard to juries, plainly shows that the legislature has often used the word "select," in connection with that subject, so as to include as well the idea of drawing persons by lot for a panel, as of the choosing of persons to be so drawn. The "selection of juries," within the plain intent of our statute law, is a term frequently applied indifferently and broadly to all the steps pre-

scribed to obtain the final panel that hears a case. R. S. 1889, secs. 6059, 6073, and page 2169, sec. 27.

But, whatever doubt there be, springing from a strictly etymological consideration of the word "select," we think, should vanish, upon weighing the force of the context with which the word appears in the law of 1885 before us. The special jury is to be "selected" by the commissioner "as he may be directed by the court."

The court may order a jury to be "selected" by the jury commissioner by process of drawing, just as it may order a jury to be summoned by the sheriff without the intervention of the commissioner at all, under section 16, page 2165, Revised Statutes 1889.

Cases may be supposed wherein the commissioner might have to exercise a limited power of selection in drawing the special jury; for example, where the court's order called for a jury of men of named occupations, or residing within (or without) certain limits of territory.

But the power of such selection is expressly confined within the limits marked by the order of the trial court, to which is thus committed the authority to determine what sort of special jury shall be "selected" and summoned. The commissioner is the hand to execute the order of the court. We consider that the statute does not design to vest in him a discretionary power of selecting special jurors, independent of the directions the court may give.

The case at the bar of Judge Withrow's court is a condemnation proceeding, in which the valuation of real estate is, presumably, the only issue involved. Can it be justly said that a court abuses its discretion, in any view of the subject, by refusing a special jury of extraordinary qualifications to try a cause of that nature? Within the meaning of the present law, we

regard a special jury as one summoned to try a particular case, and nothing more, and we hold that it is within the discretionary power of the court ordering the same to determine whether any other than general directions to summon a panel for the special case should be given. (Compare 12 Am. & Eng. Enc. Law, 320.) As the court, in this instance, merely called for 45 good and lawful men, it is not necessary to discuss the effect or validity of any other order for a jury that might have been entered.

We consider that the kind of jury to be summoned in the condemnation case was a matter within the sound discretion of the trial judge, and we discover no abuse of his discretion in ordering a special jury of good and lawful men, and then in following the terms of rule 37 in the manner he saw fit to do.

In our opinion, the rule for a prohibition should be discharged, and a judgment for the defendant entered.

BRACE, C. J., and ROBINSON, J., concur. MACFARLANE, J., dissents. But we all agree to transfer the cause at once to court in banc, in order to expedite a final decision.

SUGGESTIONS OF THE SEVEN CIRCUIT JUDGES OF ST. LOUIS.

"Article 21 of the appendix to the Revised Statutes of 1889 provides a jury system for cities having over one hundred thousand inhabitants, which is different from the jury system for the rest of the state. In addition to the qualifications prescribed by section 6060, Revised Statutes 1889 jurors for service in the cities embraced within the provisions of said article 21 are, by the terms of section 9 of that article, required to possess other important qualifications.

"The act of the general assembly which was the original of said article 21, and which was passed in 1879, was conceived by the St. Louis Bar Association, and drafted by an able committee of that association, of which Henry Hitchcock, Esq., was chairman, and was designed to have especial application to the city of St. Louis, and in view of the peculiar organization of the circuit court of the city of St. Louis. Under the provisions of that article 21, a jury list has recently been completed for the city of St. Louis in the following manner:

"The jury commissioner, with the approval of the circuit court, appointed about fifty deputies to canvass the city to collect the names of all persons eligible to jury service. These deputies were chosen mainly from young members of the St. Louis bar who, on account of their intelligence and knowledge of the requirements, were considered best adapted to that work. After a careful and thorough canvass of the city, they returned into the jury commissioner's office the names of all persons found possessing the qualifications prescribed by said section 9 of said article 21. With each name so returned was a memorandum of information, concerning the individual, such as would enable the jury commissioner to judge of his qualifications. This information was returned by the canvassers upon a prescribed form, and was verified or corrected by sending out different canvassers over the same route, and comparing their reports. When the work of the canvassers was ended, and the jury commissioner had reviewed the returns, it was found that there were 30,358 men in the city possessing the qualifications prescribed in said section 9, article 21, and liable to jury service. The names of these 30,358 men were enrolled in the books, and now compose the jury list of St. Louis. Estimating the population of St. Louis at five hundred

thousand, there should be from ninety thousand to one hundred thousand men possessing the qualifications prescribed by section 6060, Revised Statutes, 1889.

"It will thus be observed that the list of names selected for jury service does not embrace all the adult male inhabitants of St. Louis, nor all of those who would be qualified jurors under the general statute (section 6060, R. S. 1889), but only about one third of the latter, and that third selected with as much care as could be observed by an intelligent corps of canvassers and the long experience of the jury commissioner. It is, therefore, a fact, that the list from which all jurors, both regular and special, are to be drawn, is itself a carefully selected list.

"After the jury list had been made up as above stated, the judges of the circuit court gave very careful consideration to the question as to what directions should be given to the jury commissioner, as required by section 29 of said article 21 of the appendix, as to the manner in which special jurors should be selected. Theretofore no directions had been given to the jury commissioners on that subject, and the practice was for the jury commissioner, when an order for a special jury reached him, to select from the jury list whomsoever he saw fit for service in the particular case. The judges of the circuit court became satisfied, after a long experience in the practical operation of that system, that it was not the one best calculated to insure the fair administration of justice. This criticism applies, not to the jury commissioner, but to the system. And the judges, in general term, concluded that a uniform system should be adopted, and that the duty of devising and adopting such a system was devolved upon them by the provisions of the above mentioned section 29, article 21, and that the method by which the system, when devised, should be adopted, was through the rule-

making power conferred on the general term in section 27, article 6, of the constitution of Missouri, and section 11, article 17, of the appendix (R. S. 1889).

"Therefore, in the light of what is here stated, and in obedience to what they conceived to be their duty under the provisions of the law above cited, said judges, in general term, after a long discussion, unanimously adopted the rule concerning which complaint is made by the relators in this cause.

> "JAMES E. WITHROW,
> "JACOB KLEIN,
> "DANIEL DILLON,
> "JOHN M. WOOD,
> "L. B. VALLIANT,
> "THOS. A. RUSSELL,
> "PEMBROOK R. FLITCRAFT."