176   621
p176  653
f176  654

ECKRICH, Appellant, v. ST. LOUIS TRANSIT COMPANY.

Division One, July 2, 1903.

1. **Special Jury:** CONSTITUTIONALITY OF STATUTE. The statute (sec. 6566, R. S. 1899) allowing special juries in civil cases, in cities having over one hundred thousand inhabitants, is constitutional.

2. ———: ———: POWER OF SELECTION. The power to select special juries is and has always been vested in the sheriff in all parts of the State outside of cities of over one hundred thousand inhabitants, and inside of such cities it is and ever since 1885 has been vested in the jury commissioner.

3. ———: ———: INVIOLATE RIGHT TO TRIAL BY JURY. The provisions of the Constitutions of 1820 and 1865 that the right of trial by jury shall remain inviolate, and the provision of the Constitution of 1875 that the right of trial by jury as heretofore enjoyed shall remain inviolate, mean the right of trial by jury as it existed at common law. But there is no substantial difference between the character of special juries at common law and in Missouri, for special juries were known to the common law and were selected by the sheriff or coroner or (if they were disqualified) by two elisors, and special juries have been provided by the laws of Missouri, in express terms, ever since the Act of 1835, and in the country they are selected by the sheriff, and in cities of over one hundred thousand inhabitants by the jury commissioner, and in England the cost of the special jury was taxed against the party applying for it, unless the judge after the trial certified that it was a proper case for a special jury, and the same has been substantially the law of Missouri since 1885.

4. ——: ——: ——: ACT OF 1812: TERRITORIAL ACTS. Neither the Act of Congress of 1812, nor the Territorial laws prior to 1820, intended to provide for any other kind of jury than such as was known at common law. And when the Act of 1816 was passed, adopting the common law of England and the statutes of England passed prior to the fourth year of James I., as part of the law of Missouri, the common-law juries, regular and special, were adopted and became a part of the system of our laws and of the machinery of our courts.

5. ——: ——: POOR MAN: FEDERAL CONSTITUTION: EQUAL RIGHTS. The fact that a party applying for a special jury is required to deposit the cost thereof, and that that fact puts it out of the reach of a poor man to have a special jury, does not make the law obnoxious to the equality clause of the United States Constitution. The provision of the Federal Constitution preserving the right to trial by jury in both civil and criminal cases is a restriction only on the General Government and its officers, and does not prohibit the States from abolishing, altering or amending the existing right of trial by jury. Besides, the law offers the special jury to every man on equal terms. The inequality consists in the unequal financial ability of the parties to avail themselves of the benefits of the law.

6. ——: ——: SELECTION BY SHERIFF: BY LOT. The fact that the sheriff in the country, and the jury commissioner in large cities, have the power to select the special jury, and that the jurors are drawn, not by lot, as the regular panel is, does not render the special-jury law unconstitutional. Such matters depend wholly upon legislative will.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Alfred Gfeller* for appellant; *Geo. D. Reynolds* of counsel.

(1) The trial court erred in the following particulars: (a) In refusing to hear evidence as to the manner in which the special jury was selected; as to the class of citizens from whom selected; as to the exclusion from the panel of all citizens not of one class. (b) In overruling the motions to quash, having conceded that the facts stated in the motions were true. That being conceded, the motions should have been sustained. (2)

The order of the court for the special venire and the law under which that order was made, section 6566, Revised Statutes 1899, as well as section 3791, of the general law, are in violation of section 28, article 2 (Bill of Rights) of the present Constitution of Missouri in this: that the jury so selected is not the jury guaranteed by the Constitution, in and by which among other things it is provided that "the right of trial by jury (as heretofore enjoyed) shall remain inviolate." See for same clause: Const. of 1865, sec. 17, art. 1, R. S. 1865 p. 23; Ibid, R. S. 1855, p. 83;Const. of 1820, sec. 8, art. 13, R. S. 1825, p. 59. The provision in the Constitution of 1820, must be held to mean, not as that right was enjoyed at common law, but as it existed under the law in force in Missouri prior to 1820 and at the time of the adoption of that Constitution. Bank v. Anderson, 1 Mo. 244; State ex rel. v. Withrow, 133 Mo. 524. "The interpretation has been uniformly given to the operative clauses of the Constitution in whichever of the three modes pointed out they may be expressed, that the right is to be confined to those classes of cases only in which it was used at the time of the adoption of the Constitution, unless it is expressly restricted or extended to others." Note to Railroad v. Sparrow, 1 L. R. A. 480; Stillwell v. Kellogg, 14 Wis. 462; Koppikus v. State Capitol, 16 Cal. 248; Whithurst v. Colleen, 53 Ill. 247; Ross v. Irving, 14 Ill. 171; Whallon v. Bancroft, 4 Minn. 109; Railroad v. Heath, 9 Ind. 558; Byers v. Com., 42 Pa. 89; Howe v. Plainfield, etc., 37 N. J. L. 145; Proff. Juries, 127, sec. 87. "Where the Constitution gives the right, it can not be made by statute to depend upon any condition." Note to *410, Cooley, Cons. Lim.; Green v. Briggs, 1 Curtis, C. C. 311; Lincoln v. Smith, 27 Vt. 328; Norristown v. Burket, 26 Ind. 53. "The right remains inviolate so long as the jury continues to be constituted substantially as the jury was constituted when the Constitution was adopted." Note to Steck v. Colorado Fuel & Iron Co.,

25 L. R. A. 68; Matthews v. Tripp, 12 R. I. 258; Tribon v. Strowbridge, 7 Ore. 156; Edwardson v. Garnhart, 56 Mo. 81.    The law in force in Missouri when the Constitution of 1820 was adopted, was the organic law adopted by Congress for the government of the new Missouri Territory.    See, 1 Terr. Laws, p. 12, sec. 11; also Geyer's Digest, sec. 11, p. 34.    "That all free male white persons of the age of twenty-one years, who shall have resided one year in the said Territory and are not disqualified by any legal proceeding, shall be qualified to serve as grand or petit jurors in the courts of the said Territory; and they shall, until the General Assembly thereof shall otherwise direct, be selected in such manner as the said courts shall respectively prescribe, so as to be most conducive to an impartial trial and least burthensome to the inhabitants of the said Territory." Act of Congress of June 4, 1812; see, also, Act of the Territorial Legislature, Geyer's Dig., p. 272 (Act of Oct., 1810), which would appear to have been the territorial law in force immediately preceding the organic law.    The act of Congress (organic law) cited does not contemplate special juries, made up of special and privileged classes, but throws open to the choice of the litigant the whole body of citizens not within the excepted classes, as doctors, lawyers, etc., leaving to the Legislature and courts the power of declaring how the selection should be made.    The provision, being in the Constitution of 1820, and founded on the organic law, and having been repeated in every subsequent Constitution, relates back to the organic law, and, while laws providing for special juries have been passed in this State since then, they can not be held valid, and can not be treated as constitutional, if, when passed, they were not valid under the Constitution then in force.    The case of State ex rel. v. Withrow, 133 Mo. 500, did not involve the constitutionality of the special jury law, but only the question of whether the rules of court carried out the sections of the statute (3791 and 6566), and this

court holds it did not.   The statement of the judge who delivered the opinion of the court, that the rights of trial by jury "are preserved in their substantial extent, as existing at common law," overlooks the statute law in force when the Constitution of 1820 was adopted. (3)   The order of court and section 6566, Revised Statutes 1899, are in violation of section 10, article 2, Constitution of Missouri, in that they close the court to those unable to pay the fee of $75 "and such further sums as may be required to meet all expenses hereunder."   Miller v. Com. of Va., 15 L. R. An. 441.   (4) The rule of court and the statute are in violation of section 1 of the fourteenth amendment to the Constitution of the United States in that they are in contravention of the provision of that section and article which ordains that:   "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."   Virginia v. Rives, 100 U. S. 313; Ex parte Virginia, 100 U. S. 339; Bush v. Kentucky, 107 U. S. 110; Yick Wo v. Hopkins, 118 U. S. 368.   (5) The rule of court and the statute are invalid under the first section of the fourteenth amendment to the Constitution of the United States in that they give arbitrary power to one man, a jury commissioner, to exclude fit persons, and whole classes of persons from the panel and to confine his selection of jurors to a privileged few.   Yick Wo v. Hopkins, supra.   (6) The rule and statute lodge too great power and discretion in one man, a jury commissioner—a dangerous power —liable to abuse and tending to subject the life and property of the citizen to the hazard of arbitrary action and depriving him of the certain protection of the law. In this as well as in the other particulars they violate section 1, article 14, amendments to Constitution of the United States, and section 30, article 2, Constitution of

Vol 176 mo—40

Missouri, in that they tend to deprive the citizen of life, liberty and property, without due process of law, and they are in violation of section 10 of article 2 of the Constitution of Missouri, which not only requires the courts of justice to be open to every person, and right and justice to be administered without sale, denial or delay, but that certain remedy should be afforded for every injury to person, property or character. (7) While the law and rule may be fair on their face, yet if the manner of enforcing them is such as to destroy equality of right, then they must be held· to be unconstitutional. It was error to shut out appellant from making proof of the facts of the mode of executing the ' law and rule, or it must be assumed that the facts were as stated in the motion to quash, which being so, it was error to overrule the motion.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for respondent.

(1) The mode of procuring an impartial jury "is regulated by law, either common or statutory (principally the latter) and it is within the power of the Legislature to make, from time to time, such changes in the law as it may deem expedient, taking care to preserve the right of trial by an impartial jury." Stokes v. People, 53 N. Y. 173. All questions as to the mode and manner of selection rest with the Legislature, notwithstanding the constitutional provisions. People v. Petrea, 92 N. Y. 143; People v. Dunk, 157 N. Y. 528, 43 L. R. A. 247; State ex rel. v. Withrow, 133 Mo. 500; State ex rel. v. Slover, 134 Mo. 607. The fact that the party asking for the special jury is required to make a deposit of $75 does not invalidate the act. Randall v. Kehlor, 60 Me. 37. (2) Plaintiff, having refused to prosecute his case, and the same having been dismissed for want of prosecution, no errors up to that time can be reviewed by this court. Plaintiff's action was in effect the taking of a voluntary nonsuit, that is, one not

forced upon him by some adverse ruling of the court that in effect defeated his recovery. For aught shown by this record the plaintiff could have purged the panel of any objectionable jurors thereon, and might have recovered in his action. For a dismissal of a suit because the plaintiff voluntarily abandons it, no appeal lies. Chouteau v. Rowse, 90 Mo. 105.

MARSHALL, J.—This is an action for personal injuries. When the case was set for trial in the circuit court, the defendant obtained an order of court for a special jury, and under the order deposited in court the sum of seventy-five dollars to cover the cost thereof. When the case was called for trial and the special jury was called, the plaintiff challenged the array and filed the following motions in respect to which the following proceedings were had:

"Now comes Peter Eckrich, by vocation a common laborer, a citizen of the United States, and residing within the jurisdiction of the State of Missouri, the plaintiff in the above-entitled cause, and moves the court to quash the venire for a special jury ordered issued in said cause by this court, upon motion of the defendant, and made returnable on the day set for trial of this cause, for the following reasons, to-wit:

"1. The law and the established practice of this court, and the officers under which said venire for a special jury has been issued and executed, is unconstitutional and repugnant to the letter and spirit of the Constitution of the United States of America, and especially of section 1 of the fourteenth amendment thereof; because, said law, and the practice of said court and its officers thereunder, abridges the privileges and immunities of the plaintiff as a citizen of the United States, and deprives plaintiff of his property without due process of law, and denies to plaintiff, a citizen and inhabitant of the State of Missouri, and within its jurisdiction, the equal protection of the laws, in this:

"(a)   Said law, and the practice of the court and its officers thereunder, commits to the unrestrained will of a single public officer, who holds an office not provided for by the Constitution of the State of Missouri, the power of selecting a jury in a manner contrary to the common law, and against the common right, as well as contrary to the general statutes of the State of Missouri.

"(b)   It compels the plaintiff, and other persons similarly situated, to submit their causes to the exclusive determination of a jury not chosen indiscriminately from qualified jurors of the city of St. Louis, as all other jurors by law are required to be selected, but selected from a class of men reputed to be owners or controllers of great industries, and bankers, merchants and employers of labor generally, whose interests and bias are antagonistic to plaintiff, and other persons similarly situated, and it excludes from the panel laborers, mechanics and artisans and employees who have equal practical knowledge, and have equal intelligence with the class above referred to, producing an unjust and illegal discrimination between citizens of the United States, and making an unequal and unfair class discrimination in the composition of the jury.

"2.   Because the law and practice of this court, under which said venire for the special jury has been issued, is unconstitutional and repugnant to the letter and spirit of the Constitution of the United States of America, and especially to the seventh amendment thereof, and the jury summoned to try this cause is not a common-law jury, as guaranteed to him by said amendment.

"3.   Because the law and rules of practice of the court, under which said venire of a special jury has been issued and executed, is unconstitutional and repugnant to the letter and spirit of the Constitution of the State of Missouri, and especially article 2, section 10, thereof.

"4.  Because the law and rules of practice of the court, under which said venire for a special jury was issued and executed, is unconstitutional and repugnant to the letter and spirit of the Constitution of the State of Missouri, and especially article 2, section 28; and the jury summoned to try this cause is not a common-law jury guaranteed to him by the Constitution of the State of Missouri.

"5.  Because said law, and the rules and practice of the court under which said venire for a special jury has been issued and executed, is unconstitutional and repugnant in letter and spirit to section 30, article 2, of the Constitution of the State of Missouri; and that the jury summoned in this cause is so biased and prejudiced against plaintiff as to deprive him of due process of law.

"6.  Because the statute under which the venire for a special jury issued in this cause, is so indefinite and uncertain, and conflicting with other statutes of the State of Missouri, as to render it null and void.

"7.  Because the jury summoned to try this cause has not been summoned in accordance with the general laws of the State of Missouri, governing rules in civil causes."

After counsel had read the above motion to the court, the following took place in open court:

"Mr. Gfeller:  If it may please the court, I desire to introduce evidence in support of my motion to show the manner in which this jury has been selected and summoned.

"The Court:  In reference to the question of law, I don't see any necessity of taking any testimony.  I will pass on that motion and overrule it.

"Mr. Gfeller:  Permit me to have the testimony of the jury commissioner introduced in support of the motion.

"The Court:  I don't see the necessity for that. The law defines his duties.  You don't charge corrup-

tion on his part, so I don't see any occasion for taking his testimony.''

To which ruling of the court in refusing to hear evidence in support of and the overruling of said motion to quash said special venire, plaintiff's counsel then and there duly excepted.

''Mr. Gfeller: I desire to apply for a writ of prohibition in the Supreme Court of the State of Missouri, and if necessary, carry the case to the United States Supreme Court. For this reason I desire to introduce this testimony in order to show how special juries are selected and summoned.

''The Court: I am giving you the benefit of the allegations stated in the motion as being true. Are you ready for trial in the case?

''Mr. Gfeller: I am ready for trial.

''The Court: Let the jury come forward.

''Mr. Lon O. Hocker, attorney for defendant: An amended petition was filed on Saturday and I have not filed any pleading to it.

''Mr. Gfeller: I am willing that the cause may be continued to a certain day, and not be tried on its merits until this question has been passed on by the higher courts.

''The Court: The jury will be discharged until February 11th, to appear here at that time without further notice.

''Mr. Gfeller: I desire to have your honor's decision embodied in the record. I understand if what is contained in this motion were true, you would overrule the motion anyway.

''The Court: Yes.

''Mr. Gfeller: I desire to have that embodied in the record.''

Plaintiff properly saved exception to the ruling of the court.

Afterwards, at the February term, 1901, of the court, on February 11th, the cause was again called

for trial, and the special jury selected by the jury commissioner under order of court of January 7th, made, on motion of defendant, a list of which was theretofore returned into court, was called, the same having been duly summoned by the sheriff, and the following proceedings took place:

"Mr. Gfeller: If the court please, I have presented an application for a writ of prohibition to the Supreme Court, and that court refused to grant it on the ground that plaintiff must come there either by appeal, or writ of error. I again ask your honor to quash the venire for the special jury ordered selected and summoned in this cause for the reasons already urged and for additional reasons stated in an additional motion to quash, which I ask leave to file and read.

"The Court: You may file and read the motion.

"'Plaintiff's counsel filed and read his second motion to quash the special venire of jurors called in this cause, which motion is in words and figures as follows (omitting caption):

"'Now comes Peter Eckrich, a common laborer and without means, the plaintiff in the above entitled cause, and again moves the court to quash the special jury venire ordered by this court, selected by the jury commissioner and summoned by the sheriff of the city of St. Louis, and from which a jury is to be selected to try this cause, for the following additional reasons, to-wit:

"'1. Because the order of this court directing the jury commissioner to select said special venire does not state by what authority and under what statutes said order was made, nor how said venire is to be drawn and selected.

"'2. Because the order granting the defendant's application for a special jury has been made in pursuance of an established practice of the circuit court of the city of St. Louis according to which applications for special juries are granted only upon condition that

the applicant for such a jury deposit forthwith with
the clerk of said court the sum of seventy-five dollars
and from time to time such further sums as may be
required to meet all expenses under such order, thus
producing, in force and effect, an unjust and unlawful
discrimination against plaintiff and those who lack the
means and are unable to deposit such sum of money for
a special jury, and granting undue, unjust and unlawful
advantages and privileges to defendant in this cause
and to those who are possessed of the means to enable
them to comply with the rule and practice of the court,
thereby obtaining for a money consideration a venire
from which to select a jury to try their causes, entirely
different and distinct from the venires provided for
by the general statutes and laws of the State of Mis-
souri governing jury trials, contrary to the letter and
spirit of article 2, section 10 of the Constitution of the
State of Missouri, which provides that the courts of
justice shall be open to every person, and certain
remedy offered for every injury to the person, property
or character, and that right and justice should be ad-
ministered without sale, denial or delay.

" '3.   Because the order of this court granting de-
fendant's application for a special jury upon condition
that it deposit with the clerk of this court the sum of
seventy-five dollars and such further sums as may be
required, is unconstitutional, and repugnant to the letter
and spirit of section 1 of the fourteenth amendment to
the Constitution of the United States in this:   It
abridges the privileges and immunities of plaintiff as
a citizen of the United States and deprives plaintiff of
his property without due process of law, and denies to
plaintiff, a citizen and inhabitant of the State of Mis-
souri and residing within its jurisdiction, the equal pro-
tection of the law, in this: that defendant, itself a power-
ful corporation, employing a great force of laborers,
by reason of its ability to deposit with the clerk the sum
of seventy-five dollars has obtained a venire for a

special jury from which to select twelve men to try this cause, who were not drawn indiscriminately from the names of the qualified jurors of the city of St. Louis, deposited in the jury wheel, as all other jurors by law are required to be drawn, but to the contrary, a venire selected from a class of men reputed to be owners or controllers of great industries, and bankers, merchants and employers of labor generally, and solely and ex-clusively from a class of men whose interests and bias are antagonistic to plaintiff, and that in selecting said venire, the jury commissioner purposely and intention-ally excluded from the panel laborers, mechanics and artisans and employees, although they have equal in-telligence with the class of men first above referred to, thus producing an unjust and illegal discrimination and class distinction between plaintiff and defendant as citizens of the United States, and making an unequal and unfair class discrimination in the composition of this jury.

" '4. Because the facts involved in this cause do not require trial by a special jury.'

"The Court: I overrule your motion.

"To which ruling of the court in overruling said second motion to quash said special jury venire, plain-tiff's counsel then and there duly excepted.

"Mr. Gfeller: Plaintiff declines to proceed further in this cause.

"The Court: If so, I dismiss this cause for failure to prosecute, at plaintiff's cost; it is so ordered. Mr. Sheriff, discharge the special jury in the cause of Eck-rich against St. Louis Transit Company from further service.

"To which order and ruling of the court in dis-missing plaintiff's cause, plaintiff by his counsel then and there duly excepted."

Judgment of dismissal and for costs entered.

After proper steps taken, the plaintiff appealed.

## I.

The decisive question in this case is the constitutionality of the law allowing a special jury in civil cases, in cities having over one hundred thousand inhabitants, being section 6566, article 23, chapter 91, Revised Statutes 1899, p. 1553. That section is as follows: "In every city in the State of Missouri having over one hundred thousand inhabitants, all courts of record in which juries are required shall have power, upon the application of either party, to order a special jury for the trial of any cause, if the application be made at least three days before the trial, and when ordered, the jury commissioner, as he may be directed by the court, shall select and furnish to the proper officer of said court the names of the persons to be summoned for such special jury, and said officer shall summon them according to the order of the court, and make out and deliver to each party, or his attorney, a panel of the jury so summoned; but the costs of such special jury shall be paid by the party so applying, irrespective of the result, unless the judge presiding at the trial shall, at the close thereof, or within two days thereafter, certify that the costs of the special jury shall be taxed as other costs against the losing party," etc.

The plaintiff's contention is that this law violates the seventh and fourteenth amendments to the Constitution of the United States, and also sections 10, 28 and 30 of article 2 of the Constitution of Missouri, and the two motions to quash the venire filed by the plaintiffs, and set out in full herein, specify the grounds and reasons upon which the contention is bottomed.

Counsel for plaintiff, in very comprehensive, strenuous and able briefs, have amplified their contention, so that their position may be summarized to be as follows:

*First.* The provision of section 28 of article 2 of the Constitution of 1875, that, "the right of trial by

jury, as heretofore enjoyed, shall remain inviolate,''
and the provision of par. 17 of section 1, of article 1 of
the Constitution of 1865, ''that the right of trial by jury
shall remain inviolate,'' are mere continuations of, and
must be construed in the light of the provision of sec-
tion 8 of article 13 of the Constitution of 1820, ''that
the right of trial by jury shall remain inviolate,'' and
therefore a party litigant is entitled to a trial before
such a jury as was authorized by the laws of Missouri
at the date of the adoption of the Constitution of 1820,
and any law passed since that date authorizing a jury
such as was not known to the law in 1820, is unconstitu-
tional.

*Second.* That the jury guaranteed by the Consti-
tution of 1820, was not such a jury as was known to
the common law, but was such a jury as was known in
Missouri under the territorial laws before the admission
of Missouri into the Union as a State and before the
adoption of the Constitution of 1820, and that was such
a jury as was authorized by the act of Congress known
as the ''Organic Law,'' approved June 4, 1812, pre-
scribing the law for the government of Missouri Ter-
ritory, section 11 whereof was as follows:

''That all free male white persons of the age of
twenty-one years, who shall have resided one year in
the said Territory, and are not disqualified by any legal
proceeding, shall be qualified to serve as grand or
petit jurors in the courts of said Territory; and they
shall, until the General Assembly thereof shall other-
wise direct, be selected in such manner as the said
courts shall respectively prescribe so as to be most con-
ducive to an impartial trial, and least burdensome to
the inhabitants of the said Territory.''    [Geyer's Dig.,
p. 34.]

It is further contended by the plaintiff that by the
territorial Act of 1816, it was provided that: ''The
common law of England, which is of a general nature,
and all statutes . . . made prior to the 4th year

of James I. . . . which common law and statutes are not contrary to the laws of this Territory and not repugnant to or inconsistent with the Constitution and laws of the United States,'' should be deemed a part of the law in Missouri, but as the common law in reference to juries is inconsistent with the law in Missouri prior to 1820, this feature of the common law never became a part of the law in Missouri.

It is further contended that prior to 1820 the only special jury that was known to the law in Missouri, was that provided for by section 18 of chapter 93 of the Act of August 20, 1813 (1 Terr. Laws, 1804-24, p. 276), which prescribed that if a party to any pending suit made oath that he could not have a fair and impartial trial by a jury selected from the county wherein the court was sitting, the court should order a special jury to be summoned from an adjoining county.

Upon these predicates the contention is based that it was a Missouri jury and not a common-law jury that was guaranteed by the Constitution of 1820, and that the subsequent Constitutions were only intended as continuations of the provision of the Constitution of 1820, and therefore it is still only such a jury as was authorized by the laws of Missouri prior to 1820, that is guaranteed or allowed by the Constitution of 1875. And as such a special jury as is provided for by the section in question here (sec. 6566, R. S. 1899) was unauthorized by the Constitution of 1820 it is therefore unauthorized by the Constitution of 1875.

*Third.* That section 6566 aforesaid violates the Constitution of the United States in that it is such a jury as only a rich man can pay for, and therefore a poor man is denied the equal protection of the law.

*Fourth.* That section 6566 violates section 10 of article 2 of the Constitution of Missouri, which provides that: ''The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and

justice should be administered without *sale,* denial or
delay,'' in this, that a price beyond the reach of the poor
man has been placed upon the enjoyment of the right
to have a special jury, and therefore justice is sold.

*Fifth.* That section 6566 violates the Constitution
of the United States and of Missouri, and is repugnant
to the principles of justice, in this, that it allows one
man—the jury commissioner—to select the jury, and
thereby opens the door for a dishonest commissioner to
''fix'' any jury.

*Sixth.* These postulates necessarily lead counsel
to the necessity of challenging the correctness of what
they term the *dicta* in the case of State ex rel. v. With-
row, 133 Mo. 500, and to ask that what was there said
by the majority of this court shall be overruled.    Coun-
sel are also forced to contend that the decisions of this
court in Vaughn v. Scade, 30 Mo. 600; State ex rel. v.
Slover, 134 Mo. 607, and of both the majority and
minority in State v. Hamey, 168 Mo. 167, are wrong,
and that the only correct rule that has ever been an-
nounced in this State is that laid down in Bank v. An-
derson, 1 Mo. 244, and in the minority opinion in State
ex rel. v. Withrow, 133 Mo. l. c. 523.

It will be observed that the position taken by coun-
sel for plaintiff is extreme and far-reaching, and if it
is correct, the result would be that every verdict that
has been rendered by a special jury in this State since
1835, has been an unconstitutional verdict.   The adop-
tion of such a view would be most revolutionary, and
would be a sad reflection upon the intelligence and legal
learning of the legislators who have enacted the laws
that have been on our statute books since 1835, and of
the bar and bench that invoked and enforced such laws.
Such a view ought not to be lightly considered or
adopted.   A retrospect, as brief as the subject permits,
of the origin, growth, and present condition of the law
in Missouri in regard to the right of trial by jury, is
both necessary and pertinent.

At common law the sheriff selected and summoned the jury pursuant to a writ of *venire facias* issued out of King's Bench, and if the sheriff was disqualified to act, the coroner acted, and if he was disqualified the court appointed two elisors to act. [12 Enc. Pl. and Prac., p. 273.] Originally the sheriff used his own discretion as to the number to be summoned, and it was not until the Statute of William II., ch. 38, that the number was limited to twenty-four. [Thompson and Merriam on Juries, secs. 67 and 79; 12 Enc. Pl., and Pr., p. 334, and cases in notes; Idem, p. 273.]

The essentials at common law were that the jury should be composed of twelve men, that they should be impartial, and that their verdict should be unanimous. [State ex rel. v. Slover, 134 Mo. l. c. 612; Thompson and Merriam on Juries, sec. 4.]

There were two kinds of trial juries known to the common law, the regular panel for the sitting or term of court, and the special jury. Speaking of the latter kind, Thompson and Merriam on Juries, sec. 12 and 13, says: "Special juries appear to have been first introduced in the King's Bench, upon trials at bar, in causes of great consequence, or, as stated by Blackstone, 'when the causes were of too great nicety for the discussion of ordinary freeholders; or where the sheriff was suspected of partiality, though not upon such apparent cause as to warrant an exception to him.' Later the practice seems to have become quite general in all the courts of allowing them, upon simple application in any civil case, as a matter of course, or at least they seem to have been easily procured when the granting was within the discretion of the court. . . . In making up the list from which a special jury is to be struck, the officer charged with this duty is not obliged to take the names in any order in which they stand upon the register of jurors. He may make a selection of names of persons who, from their position in the community,

are more likely to be possessed of that intelligence which is sought in a jury of this kind.''

"By the English Jury Act'' (6 Geo. 4, ch. 50, sec. 34) ''the party applying for a special jury is fixed with the costs of the same, 'unless the judge before whom the cause is tried shall, immediately after the verdict, certify under his hand, upon the back of the record, that the same was a cause proper to be tried by a special jury.' '' [Thompson and Mer. on Juries, sec. 13, par. 4, p. 15.]

So a special or struck jury is allowed in nearly all of the States of the Union, ''in order to obtain persons acquainted with the particular class of matters involved in the case,'' or when ''it appeared necessary in order to obtain a fair trial, or when it appeared to be required by the 'importance or intricacy' of the case.'' [17 Am. and Eng. Ency. Law (2 Ed.), pp. 1196-7; Thompson and Mer. on Juries, sec. 14, and statutes cited in notes.]

The first law in Missouri relating to juries was the Act of October 1, 1804 (1 Terr. Laws, 1804-24, ch. 13, sec. 13, p. 61), by which it was provided that in all criminal prosecutions ''the trial shall be by a jury of twelve good and lawful men of the vicinage, and in civil cases the trial shall be by a jury, if either of the parties require it, and in all cases where neither of the parties shall require a jury, the law and the fact shall be determined and damages assessed by the court, and execution awarded as in other cases,'' etc. Section 15 of the act provided penalties for failure to attend when summoned as a juror, but there was no provision made as to how or by whom the jury should be selected or summoned, presumably leaving those matters as they had previously been regulated, however that was.

The next law in Missouri on this subject was the Act of October 28, 1808 (1 Terr. Laws 1804-24, ch. 60, p. 198), under which the judges of the courts of common pleas were required to select, from a list to be furnished by the collector of taxes of all free white male persons,

over twenty-one years old, whose taxable estate in real or personal property amounted to one hundred dollars, "sixty honest and intelligent householders, farmers, merchants and traders, inhabitants of this Territory, not being clergymen, practitioners of physic, or attorneys of any court, sheriffs or their deputies, ferry-keepers, or constables, or such as be, or be reputed, persons of ill fame, but altogether such as be of the best fame, reputation and understanding and credit in there [their] district." The names so selected were required to be written on separate pieces of paper of the same size, and the clerk was required, in the presence of the judges, the suitors and others attending the court, to draw by lot the names of the jurors to serve at the next term of the courts of common pleas in St. Louis, Saint Genevieve, St. Charles, Cape Girardeau and New Madrid. The clerk was required to keep the pieces of paper on which such names were written in a box, and for the trial of all criminal cases, and of all civil suits in the general court, he was required to draw out twelve names, as the jury to serve therein. [Idem, sec. 5, p. 200.]

The next law in Missouri relating to juries, was the Act of October 25, 1810 (1 Terr. Laws, 1804-24, p. 238; Geyer's Dig., p. 272). Section 1 of the act provided: "The several courts within this Territory before whom juries are required, are hereby authorized to direct the respective sheriffs to summon a sufficient number of persons to perform the duties of jurors." Section 2 made every male resident of lawful age, except clergymen, physicians, attorneys, sheriffs, clerks of courts, ferry-keepers, constables and judges of courts of record, subject to jury duty, but required the courts to divide the task of sitting on juries as near as may be equally among all citizens, and in order to "obtain the impartial administration of justice" gave the court power to direct the sheriff "to avoid persons of ill fame, or those who labor under the influence of either party."

The Act of October 28, 1808, was expressly repealed.

Thus the sheriff was vested with the power of selecting and summoning the jury, with the qualification stated.

Then came the Act of Congress of June 4, 1812 (1 Terr. Laws, 1804-24, p. 12; Geyer's Dig., p. 34), by section 11 whereof, which is fully set out, supra, it was provided that all free male white persons of the age of twenty-one years, who have resided in the Territory one year, and are not disqualified by any legal proceeding, shall be qualified to serve as jurors, "and they shall until the General Assembly thereof shall otherwise direct, be selected in such manner as the said courts shall, respectively, prescribe, so as to be most conducive to an impartial trial, and least burdensome to the inhabitants of the said Territory."

Circuit courts were first established in Missouri by the Act of January 4, 1815 (1 Terr. Laws, 1804-24, p. 345), but nothing was said in that act about selecting jurors.

The Act of January 21, 1816 (1 Terr. Laws, 1804-24, p. 444), created the Superior Court of the territory. Section 6 of the act made it the duty of the judges of the court, or any two of them, to issue their precept, directed to the sheriff or coroner, commanding him to summon sixty good and lawful men of his county, qualified by law, to serve as grand and traverse jurors at the next term of the Superior Court.

By the Act of Congress of March 6, 1820, Missouri was admitted into the Union, and the consent of the people of Missouri, in convention assembled, was given thereto on July 19, 1820. [1 Terr. Laws, 1804-24, p. 632.]

Thereafter, the Practice Act of January 11, 1822 (1 Terr. Laws, 1804-24, p. 841), was adopted, by the forty-second section whereof it was provided that any party to a suit might "require a trial by jury," but if

Vol 176 mo—41

neither party required a jury the court should determine the law and the facts, or might refer the cause "to three or more indifferent and competent persons, whose report if approved by the court shall have the same effect as a verdict by a jury." Nothing was said about how the jury should be selected or summoned nor whether it should be a common or special jury that a party might "require."

The next act was approved December 28, 1826 (2 Terr. Laws, 1824-36, p. 95), and was entitled "Jurors," the third section whereof required the party demanding a jury to deposit, at the time of the demand, the sum of twenty-five cents for each juror, which should be paid to the jurors as soon as the verdict was rendered, and which was taxed as costs against the losing party, but if the party made affidavit that he was unable to make such deposit, he should nevertheless be entitled to demand a jury, and the jury fee should be taxed as costs. Nothing was said in this act about who should select the jury nor the character of the jury.

Next came the Act of March 17, 1835 (R. S. 1835, p. 342), which was entitled "Jurors." The first section of the act provided: "All courts before whom juries are required, may order the sheriff or other officer to summon a sufficient number of jurors." The fourteenth section provided: "The court shall have power to order a special jury for the trial of any civil cause; in such case the sheriff shall summon eighteen jurors, according to the order of the court, and make out and deliver to each party or his attorney, a list of the jury so summoned, and each party shall have the right to strike off three of the names on such list." The fifteenth section provided that if a party should make affidavit that he could not have a fair and impartial jury to try the case on account of the unfriendliness or prejudice of the sheriff and coroner to him or his attorney, the court should appoint some disinterested and impart-

ial person, "who shall act as elisor, and proceed to summon a fair and impartial jury."

It will be noted how like to the common law this act was, and also that the first section is very similar to the Act of 1810, supra, without the qualification as to the power of the sheriff in selecting the jury.

Sections 1 and 14 of the Act of 1835 were carried almost literally into the revision of 1845. [R. S. 1845, chap. 91, pp. 627-8.]

Section 1 of the Act of 1835 was carried literally also into the revision of 1855 and became section 2 of chap. 88. [Revised Statutes 1855, p. 910.]

Section 14 of the Act of 1835 relating to special juries was also carried into the revision of 1855, the only change being that the sheriff was required to summon twenty-four persons for such special jury. [R. S. 1855, sec. 24, p. 912.]

Sections 7 and 14 of the Act of 1835 were also carried into the revision of 1865 and became sections 19 and 23 of chapter 146, General Statutes 1865, p. 599, with the change from eighteen to twenty-four above noted that was made by the revision of 1855.

The Act of March 15, 1873 (Laws 1873, p. 46) entitled, "An act to provide for the manner of selecting and summoning grand and petit juries for courts of record," provided by section 2, that: "The county court of each county, at a term thereof, not less than thirty days before the commencement of the circuit court, or other court having civil and criminal jurisdiction, shall select the names of not less than one hundred and seventy-five persons having all the requisite qualifications of jurors; and the names of such persons shall be written on separate slips of paper, placed in a box to be provided for that purpose, and thoroughly intermixed; and the court, in selecting such names, shall select, as near as practicable, the same number from each township in the county, according to population." Section 3 provided: "The clerk of the county court, so

situated as to be unable to see the names on said slips, shall then, in the presence of said court, draw, by lot, from said box, the names of eighteen persons, who shall serve as a grand jury of the county, at the next term of the court for which said jury is drawn; and said clerk shall then, in like manner, draw, by lot, from said box, the names of twenty-four persons, who shall serve as a petit jury at the next ensuing term of said court for which said petit jury is drawn.''

Section 6 provided that if the regular panel be exhausted the court should order the sheriff, or other proper officer, to summon a sufficient number of other competent and qualified persons to complete the panel, and in executing the order it required the sheriff to summon ''sober, intelligent and industrious persons to complete such panel; and he shall not summon any vagrant, common idler or person having no visible means of support.''

This act changed the method of selecting the regular panel of petit jurors and took away from the sheriff the power of selection that had been conferred upon him ever since the Act of 1808, and vested that power in the county court, to be exercised by lot as described, and left the sheriff the power of selection only as to such jurors as became necessary after the regular panel was exhausted.

This act had no application, however, to special juries, and left their selection to the sheriff as it was provided for by section 23 of chapter 146, General Statutes 1865, p. 599.

The aforesaid provisions of the Act of 1873 as to the regular panel, were re-enacted by the Act of March 28, 1874. [Laws 1874, p. 97, sections 2, 3 and 7.]

This act also left the provisions of the General Statutes of 1865 as to special juries unaffected.

The Act of March 15, 1875 (Laws 1875, p. 80), providing for the selection of the regular panel of petit jurors, repealed the provisions of the Act of 1873 and

1874, vesting the power of selection in the county court, with the power in the sheriff only to select further jurors after the regular panel was exhausted, and re-enacted, almost literally, the provisions of sections 1 and 14 of the Act of 1835, and again vested the power of selection of both the regular panel and the special juries, in the sheriff. [Laws 1875, secs. 19, 20 and 23, pp. 80-1.]

In the revision of 1879 the Act of 1875 seems to have been entirely overlooked, and the provisions of the Act of 1874 were carried into the revision of 1879, with certain amendments thereto which are not important to this inquiry, and sections 2, 3, and 7 of the Act of 1874 aforesaid, became sections 2784, 2785 and 2788 of chapter 43, Revised Statutes 1879.

Thus the county courts were again given the power of selecting the regular panel, and the sheriff was given only the right to select those necessary to fill up after the regular panel was exhausted.

But a new section was added to the law and was numbered section 2802 to that chapter, which provided: "Either party to a cause pending in the circuit court, or court of common pleas or criminal court of any county, and triable by a jury, shall be entitled, as of course, to an order for a special venire on motion made therefor, three days before that on which the case is set for trial; but the cost of such special jury shall be paid by the party so applying, irrespective of the result, unless the judge presiding at the trial shall, at the close thereof, or within two days thereafter, certify that the case was one for the trial of which a special jury should have been ordered, in which case the costs of the special jury shall be taxed, as other costs against the losing party. This section shall apply to cities having over one hundred thousand inhabitants, as fully as to all other parts of the State."

Nothing is said in this section as to who shall select the special jury, nor is there any provision requiring a special jury to be drawn from the list of

jurors made up by the county court. Therefore section 23 of the Act of 1875 (Laws 1875, p. 81) remained in force and the sheriff had to select them.

The last sentence of section 2802, Revised Statutes 1879, making the new section apply to all cities of over one hundred thousand inhabitants, as well as to the whole State, was evidently added because of the Act of April 11, 1879 (Laws 1879, p. 28), which provided that in all cities of this State having over one hundred thousand inhabitants the judges of the circuit and criminal courts should appoint a jury commissioner, who was required to make up a jury list, and put the names of the qualified jurors on separate slips of paper, in a wheel, and should draw a jury from the wheel, by lot, whenever the court ordered a jury. [Laws 1879, p. 33, sec. 16.]

This act said nothing about special juries. Hence, the significance of the last sentence of section 2802, Revised Statutes 1879.

The provisions of sections 2784, 2785, 2788 and 2802, Revised Statutes 1879, were carried into the Revised Statutes of 1889, and became sections 6067, 6068, 6073 and 6089, respectively, of the Revised Statutes of 1889, and those sections were in turn carried into the revision of 1899, and became sections 3769, 3770, 3775 and 3791, Revised Statutes 1899.

The Act of April 11, 1879, regulating juries in cities of over one hundred thousand inhabitants, was amended by the Act of March 17, 1885 (Laws 1885, p. 74), which provided for special juries in such cities. This act is like section 2802, Revised Statutes 1879, and in addition made sections 17 to 25 of the Act of April 11, 1879, in relation to the summoning and service of common jurors, applicable also to special juries. This act passed into the Revised Statutes of 1889 and become section 29 of art. 21 of the Appendix to vol. 2, at p. 2169, Revised Statutes 1889. The balance of that article being the Act of April 11, 1879, aforesaid. This act passed

also into the revision of 1899 and became article 23 of chapter 91, Revised Statutes 1899, the Act of 1885 aforesaid relating to special juries in cities of over one hundred thousand becoming section 6566, Revised Statutes 1899, which is the section whose constitutionality is challenged in this case, and being section 29 of article 21, of the Appendix to Revised Statutes 1889, which is set out in full in State ex rel. v. Withrow, 133 Mo. at page 511; and which underwent adjudication in that case.

Thus it appears that from 1808 to 1873 the sheriff was vested with the power of selecting all juries regular as well as special; that by the Acts of 1873 and 1874 the power to select regular jurors was transferred from the sheriff to the county courts, but the provisions of the General Statutes of 1865 (sec. 23 of chap. 146) which vested in the sheriff the power to select special jurors, remained in full force; that the Act of 1875 again placed the power of selection of both regular and special juries in the sheriff; that the revision of 1879 gave the power to select the regular panel to the county court, and added a new section (2802) providing for special juries, but did not specify who should select them; that the same is true of the revisions of 1889 and 1899; that the Act of 1879 provided for the appointment of a jury commissioner in all cities having over one hundred thousand inhabitants, and prescribed for his making up a jury list and drawing the regular panel from a wheel, nothing being said about special juries; that the Act of 1885, which became section 29 of article 21 of the Appendix to the Revised Statutes of 1889, and afterwards became section 6566, Revised Statutes 1899, relating to special juries in cities of over one hundred thousand inhabitants, required the jury commissioner in such cities to select the special jurors, and that under the decision of this court in State ex rel. v. Withrow, 133 Mo. 500, the jury commissioner was not required to draw the special jury from the wheel, by lot, but had

a right to select them from the list of qualified jurors that he was required by law to keep.

So that the power to select special juries is and has always been vested in the sheriff in all parts of the State outside of cities of over one hundred thousand inhabitants, and inside of such cities it is and ever since 1885 has been vested in the jury commissioner.

It thus appears that at common law and in Missouri from 1835 to this date special juries have been provided for by law, and that the sheriff always has selected them, except since 1885 in cities of over one hundred thousand inhabitants, where the jury commissioner selects them.

There is no substantial difference between the character of special juries at common law and in Missouri.

This court has uniformly held that the provisions of the Constitutions of 1820 and 1865 that the right of trial by jury shall remain inviolate, and the provision of the Constitution of 1875 that the right of trial by jury as heretofore enjoyed shall remain inviolate, mean the right of trial by jury as it existed at common law.

In Vaughn v. Scade, 30 Mo. 600, SCOTT, J., said: "The term 'trial by jury' was well known and understood at the common law, and in that sense it was adopted into our Bill of Rights. Of course the nonessentials of that institution, such as concern the qualifications of jurors, the mode of summoning them, and many other such matters, were left to the regulation of law. The Constitution is preserved in retaining the substance of that form of trial as it was known and practiced among those from whom we have derived it."

The same rule was laid down by SHERWOOD, J., speaking for the majority of the court in State ex rel. v. Withrow, 133 Mo. 500, and by GANTT, J., in State ex rel. v. Slover, 134 Mo. 607, and by GANTT, J., speaking for the majority of the court in State v. Hamey, 168 Mo. 167.

The only utterances from this court or any of its

members to the contrary are what was said by McGirk, C. J., in Bank v. Anderson, 1 Mo. 244, by Barclay, J., in his dissenting opinion in State ex rel. v. Withrow, 133 Mo. l. c. 523, and by Sherwood, J. (in which the writer hereof concurred), in the dissenting opinion in State v. Hamey, 168 Mo. l. c. 204.

Judges McGirk and Barclay agree with the contention of the plaintiff herein that the Constitution of 1820 does not guarantee a common-law jury, but only such a jury as was prescribed by the territorial laws or Missouri prior to the adoption of the Constitution of 1820, and that the only special jury that was spoken of in those laws was a special jury called from an adjoining county, when a party litigant disqualified, by affidavit, the people of the county in which the court was sitting.

The dissenting opinion in State v. Hamey, 168 Mo. 204, held that the Constitution of 1875 was an original, organic instrument, and not a mere continuation of the Constitution of 1820, and that the provision that the right of trial by jury as heretofore enjoyed should remain inviolate meant as that right was enjoyed according to the laws of the State of Missouri, which included the common law and the English statutes enacted prior to the fourth year of James I., except as modified by our statute, and was not limited to the right of trial by jury as it was known to the common law. [Ice Co. v. Tamm, 138 Mo. l. c. 388; see, also, to the same effect Perry v. State, 9 Wis. 19.] But so far as the case at bar is concerned, there is no difference of opinion under either the majority or the minority opinion in the Hamey case. For special juries were known to the common law, and were selected by the sheriff or the coroner or two elisors, and special juries have been provided for by the laws of Missouri, in express terms, ever since the Act of 1835, and in the country they are selected by the sheriff, and in cities of over one hundred thousand inhabitants they are selected by the jury commissioner.

In England under the Statute of 6 George 4, ch. 50, sec. 34, the cost of the special jury is taxed against the party applying for it, unless the trial judge after the trial certifies that it was a proper case for a special jury, and the same has been substantially the law in Missouri since 1885.    Under section 2802, Revised Statutes 1879, the party applying for the special jury was required to pay the costs thereof, irrespective of the result. Similar provisions requiring the applying party to pay for the special jury are also contained in the laws of Delaware (R. S. Del. 1874, chap. 109, sec. 18); Indiana (2 Indiana Rev. St. 1878, p. 159, sec. 1, note); Ohio (R. S. Ohio, 1880, sec. 5188); New York (N. Y. Code Rem. Jus. 1876, sec. 1069); Michigan (Comp. Laws, Mich. 1871, sec. 6011); and New Jersey (Rev. St. N. J. 1877, p. 528, sec. 26).

"The power of the Legislature to require payment of a reasonable jury fee as a condition to entitle a party to a jury trial, and to provide that the failure to do so shall constitute a waiver of the jury, is undoubted." [12 Enc. Pl. and Pr., 249.]

The plaintiff, however, attempts to break the connection between the common-law right of trial by jury and the right of trial by jury in Missouri since 1835, by invoking the act of Congress of June 4, 1812, and by saying that there have been no lawful special juries in Missouri since 1835, because all of the laws authorizing them were violative of the Constitution of 1820.

The act of Congress of June 4, 1812, simply prescribed the qualifications for jurors (which was evidently intended to nullify the Territorial Act of Missouri of 1808 prescribing a property qualification for jurors, but which act, as already herein pointed out, was repealed by the Territorial Act of 1810), and then provided that until the General Assembly of the Territory of Missouri should otherwise direct, the jurors should be selected in such manner as the courts might prescribe.

It will be easily and readily seen that this act was not intended to have the effect of establishing a new jury system nor of abolishing the special juries known to the common law, any more than of abolishing any other kind of a jury that was known to the common law. The territorial laws enacted prior to 1820 are in the same condition. They simply provided that a party should be entitled to a trial by jury and when a jury was demanded the court should order the sheriff to summon one. No particular kind of a jury was specified, and no intimation can be gleaned from the act of Congress or from these territorial laws that any other kind of a jury than such a jury as was known at common law was intended. That was the only kind of a jury the fathers of our country knew or had any respect for.

Therefore when the Act of 1816 was passed, adopting the common law of England and the statutes of England passed prior to 4th James I., as a part of the law of Missouri, the common-law juries, regular and special, were adopted and became a part of the system of our laws and of the machinery of our courts.

This being true they were the kinds of juries that the Constitution of 1820 guaranteed. There were no Missouri juries, as distinguished from common-law juries, prior to the adoption of the Constitution of 1820, and, therefore, the foundation of the plaintiff's whole contention is untenable.

The fact that a party applying for a special jury is required to deposit the cost thereof and that it puts it out of the reach of a poor man to have a special jury, does not make the law obnoxious to the Federal Constitution.

"The preservation of the common-law right to trial by jury in both civil and criminal cases is guaranteed by the Federal Constitution, as well as by the fundamental law of the several States. It is well settled that the Federal provision is a restriction only on the general Government and its officers, and the States may con-

stitutionally abolish, alter or amend the existing right of trial by jury." [6 Am. and Eng. Ency. Law (2 Ed.), p. 974, and cases cited in notes.]

The requirement of such a deposit no more violates the equality clause of the Federal Constitution than the fact that a rich man can employ the highest price lawyers, while the poor man can only afford to employ the lower price lawyers violates the constitutional guarantee that a man shall be entitled to defend by himself or by counsel.

The law furnishes the jury to every man on the same terms. The inequality consists in the unequal financial ability of the parties to avail themselves of the benefits of the law.

Neither does the fact that the sheriff in the country or the jury commissioners in the large cities have the power to select the special jury, and that they are not drawn, by lot, as the regular panel is, make the law unconstitutional. Such matters depend wholly upon the legislative will. The power of selection must be lodged somewhere, in one or more persons, and it is for the legislative wisdom to provide whether the power shall be vested in the sheriff, as it was at common law and is in Missouri outside of the large cities, or in a jury commissioner in the large cities, or in a body composed of more than one.

Experience does not justify the fear expressed by the plaintiff of having juries "fixed" because the power is vested in a single officer, nor does the selection by the officer and not by chance or lot make the law unconstitutional. [Perry v. State, 9 Wis. 19.]

Special juries are allowed by the laws of the United States in the Federal courts. Section 805, U. S. Compiled Statutes 1901, vol. 1, p. 626, provides: "When special juries are ordered in any circuit court, they shall be returned by the marshal in the same manner and form as is required in such cases by the laws of the several States."

These considerations show that the judgment of the circuit court is right and it is therefore affirmed. All concur, except *Robinson, J.,* absent.