# J. Q. SMITH et al., Appellants, v. JEFFERSON BANK, Respondent.

### St. Louis Court of Appeals, March 22, 1910.

1. **APPELLATE PRACTICE: Special Jury: Refusing to Discharge: Discretion of Court.** Where the record on appeal omits the *voir dire* examination of a special jury and there is nothing to support an accusation of policy in summoning the jury and the probability of bias in its members unfavorable to the party claiming error and no abuse of the court's discretion to try the cause by a special jury appears, an exception taken to the overruling of a motion to discharge said jury will be disallowed.

2. **FACTORS: Powers of Factors: Limitation of Authority.** An invoice containing the words "terms, cash on delivery of goods" limits the authority of the consignee, as between him and the consignor, to pass title by sale or reconsignment, unless the course of business pursued by them has been in disregard of similar restrictions in invoices of prior shipments.

3. ———: ———: **Transactions with Third Parties.** One having no knowledge of restrictions on the power of a consignee, with power to sell or reconsign, may deal with him as having complete power to pass title.

4. ———: ———: ———: **Evidence: Invoice Sent to Factor Incompetent as to Third Persons.** A consignor shipped goods to a factor to sell or reconsign and a corporation controlled by the consignee received and reconsigned the goods and sold the draft drawn against them to a bank, which took possession of the goods and retained the proceeds on a sale thereof. In an action by the consignor against the bank for conversion, the invoice of shipment to the consignee containing the words "terms, cash on delivery of goods" was incompetent against defendant, for it had never seen it and hence knew nothing of the supposed restriction of the authority of the consignee to dispose of the goods.

5. ———: ———: ———: **Sale by Person Other Than Consignee: What Purchaser Must Show.** The invoice of a shipment to a consignee contained the words "terms, cash on delivery of goods." The consignee had power to sell or reconsign and take bills of lading and attach them to a draft. A corporation, controlled by the consignee, received the goods, reconsigned them, and sold the draft drawn against them to a bank, which took possession of the goods and retained the proceeds on a sale thereof. The bank had no knowledge of the restriction

on the power of the consignee to dispose of the goods. *Held,* that the bank, to maintain its title against the consignor, must show that the acts done by the corporation were ordered by the consignee or persons authorized to act in his absence, or that the consignor either expressly or by a course of dealing authorized the corporation to act as agent, or that the consignor, with knowledge of the facts, ratified the transaction.

6. ————: ————: ————: ————: ————: Course of Business: Ratification of Factor's Acts: Evidence. A consignor shipped goods to a factor to sell or reconsign. A corporation controlled by the consignee reconsigned the goods, and sold the draft drawn against them to a bank, which took possession of the goods and retained the proceeds on a sale thereof. The corporation sent its own draft to the consignor in payment of the goods, which the consignor accepted and transmitted to a bank for collection, but the draft was dishonored because of the insolvency of the corporation. *Held,* that evidence of a course of business whereby the corporation when it needed money drew drafts on the consignor, which the bank cashed and the consignor paid, was competent against the consignor to affect him with notice of the insolvency of the corporation at the time he accepted the draft, and thus show ratification by acceptance of the corporation's disposition of the goods as his agent.

7. ————: ————: ————: Similar Facts or Transactions: Evidence. A consignor shipped goods to a factor to sell or reconsign. A corporation controlled by him reconsigned the goods and sold the draft drawn against them to a bank, which took possession of the goods and retained the proceeds on a sale thereof. The consignor sued the bank for conversion after he had accepted the draft of the corporation sent in payment of the goods, but which draft was not paid because of the insolvency of the corporation. There was nothing to show the bank knew of the financial condition of the corporation. *Held,* that evidence of prior drafts drawn by the corporation or the consignee against the consignor, discounted by the bank and paid by the consignor, disconnected with the transaction in controversy, were inadmissible as against the bank, since they threw no light on the issues and did not conduce to prove the bank knew the insolvent condition of said corporation.

8. INSTRUCTIONS: Not Based on Evidence. An instruction without evidence on which to rest is properly refused.

9. ————: Covered by Others Given. It is not error to refuse a requested instruction which is covered by others given.

10. ————: Singling Out Facts. An instruction commenting on particular facts by singling them out is properly refused.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Williams*, Judge.

AFFIRMED.

*P. C. Young* for appellant.

(1) The court erred in refusing to discharge the special jury. "While statutory provisions respecting the drawing of a jury are regarded as discretionary merely, it does not follow that essential provisions of the statutes can be absolutely disregarded." State v. Austin, 183 Mo. 478; State v. Lehman, 175 Mo. 619. A special jury should be denied where no particular skill or knowledge is demanded and where no reason why the cause cannot be disposed of by the regular panel exists. Emerson v. McCullough, 2 Mort. C. & P. 483; Walsh v. Ins. Co., 2 Rob. (N. Y.) 646; Ives v. Ranger, 20 N. Y. Supp. 32; Hartshorn v. Geltson, 3 Cal. (N. Y.) 84. (2) The court erred in refusing to admit the invoices as evidence. If the Central Bank knew that the purchase money had not been paid by Imboden, it was not an innocent purchaser when it placed the proceeds of the wheat to the Imboden account. That Imboden & Co. were indebted to the Central Bank made no difference, it could not apply and it could not pay the debt of the one with the funds of another without the consent or knowledge of the latter. Commission Co. v. C. Bank, 116 Mo. 585; Schloss v. Feltus, 96 Mich. 619; McIvers v. Williams, 83 Wis. 570; Warner v. Martin, 11 How. (U. S.) 209; Miller v. Schneider, 19 La. Ann. 300, 92 Am. D. 535; Benny v. Begram, 18 Mo. 191, 59 Am. D. 298; Hoffman v. Carmer, 123 N. C. 566; Gerard v. Taggart, 5 Ser. & R. 19, 9 Am. D. 327; 2 Clark and Styles Agency, sec. 882.

*Block & Sullivan* for respondent.

(1) Appellants did not disaffirm the act of the Mound City Produce Company in reconsigning and

drawing drafts against the eggs in question, but retained the drafts sent them by the Mound City Produce Company on July 18th in part payment for the said eggs, and still had these drafts long after this suit was brought; hence there was no rescission or disaffirmance and they could not bring or maintain this suit. Implement Co. v. Ellis, 125 Mo. App. 692; Chemical Co. v. Nickels, 66 Mo. App. 678; Estes v. Reynolds, 75 Mo. 565; Roeder v. Robertson, 202 Mo. 535. (2) The granting of a special jury is the exercise of a common law power vested in the judges of this State, and may be granted at any time within the discretion of the trial judge. State ex rel. v. Withrow, 133 Mo. 503; Eckrich v. Transit Co., 176 Mo. 622. (3) Where proper objection is made, it is not competent to introduce evidence contradicting allegations set out in a party's pleading. Wilson v. Albert, 89 Mo. 546; Kuhn v. Weil, 73 Mo. 215; Weil v. Poston, 77 Mo. 284. (4) Where a factor also buys and sells merchandise on his own account, he may be dealt with as an owner. Crocker v. Irons, 3 Mo. App. 486; Smith v. Bank, 120 Mo. App. 543. (5) An endorsee for collection is a holder for value if he parts with value on the faith of the transfer. Bank v. Ball, 60 Mo. App. 588; Ames v. Bank, 79 Mo. 421; Smith v. Bank, 120 Mo. App. 543. (6) An endorsee for value of a draft is a holder for value of the property represented by the bill of lading accompanying the paper. Dymock v. Bank, 67 Mo. App. 104; Smith v. Bank, 120 Mo. App. 527.

At the request of plaintiff the court gave the following instructions:

"1. If you find from the evidence the eggs belonged to the plaintiffs when the drafts were turned over to the bank and that the bank then had knowledge of such facts and circumstances as would put a reasonably prudent and careful person upon inquiry, as to the title thereof or the right of the Mound City Produce

Company to dispose of them, then it was the bank's duty to make such inquiry, as the law does not permit one to remain ignorant when the means of knowledge are at hand.

"2. To authorize the Mound City Produce Company to draw upon these eggs and deposit the drafts to its own credit with the defendant bank, the evidence must satisfy you of the existence of at least one of the following propositions: That it had direct authority to do so from the plaintiffs or that with the knowledge, consent and approval of the plaintiffs it had received such authority from B. W. Redfearn, W. P. Johnson, or Claude L. Gunn, or that such authority was conferred upon it by a previous course of dealing or that the plaintiffs ratified its acts with reference to these eggs. Should you not be satisfied from the evidence of at least one of the foregoing propositions then your verdict should be for the plaintiffs. The burden of proving any one of these propositions is on the defendant.

"3. To warrant you in finding authority was conferred by a previous course of dealing upon the Mound City Produce Company to draw upon the eggs and place the drafts to its own credit with the defendant bank and remit the proceeds in its own drafts, you must be satisfied from the evidence of both of the following propositions: First, that a course of dealings had actually existed on the part of the Mound City Produce Company, prior to July 18, 1904, and that the plaintiffs knew, or by the exercise of ordinary prudence ought to have known, of such previous course of dealings. The burden of proving such previous course of dealings and knowledge thereof on the part of the plaintiffs is on the defendant.

"4. The defendant does not contend in its answer that the drafts of the Mound City Produce Company upon itself, one for $1175, and the other for $1300,

sent to the plaintiffs at the time the eggs were reconsigned, were received by the plaintiffs as actual payment for the eggs; but does contend that by receiving and placing said drafts of the Mound City Produce Company upon itself to their own credit, the plaintiffs so confirmed and ratified the acts of the Mound City Produce Company with reference to their eggs that they cannot recover against the defendant bank. To warrant you in so finding you must be satisfied from the evidence that the plaintiffs at the time they made such deposit with their own bank at Fredonia, were not laboring under any mistake as to material fact or facts in the case. The burden of showing such ratification is on the defendant.

"5. Should you find from the evidence that B. W. Redfearn, C. L. Gunn and W. P. Johnson were the plaintiffs' agents to dispose of the goods, then you are instructed they could not delegate, authorize or empower either the Mound City Produce Company or any one else, to act in their place for the plaintiffs without their knowledge, consent or ratification. The burden of showing that the Mound City Produce Company was authorized to draw upon these eggs and deposit said drafts to its own credit with the defendant bank is on the defendant.

"6. You are instructed that the court has used the word 'goods' as referring to the eggs in controversy and that bills of lading represent the title of the eggs and anything that might or might not be done with the goods applies equally to the bill of lading.

"7. If you should find for the plaintiffs, then your verdict should be in their favor for the market value of the eggs, in the city of St. Louis, on the 18th day of July, 1904, and in addition you may, if you shall think fit, give damages in the nature of interest, over and above the value of the goods at the time they were taken, at not to exceed six per cent per annum on the entire value of the eggs, from said 18th day of

July, 1904, to the present time; that is, such damages not exceeding the said rate as you may find from the evidence the plaintiffs have suffered on account of the said conversion of the said eggs, if any.''

At defendant's request the court gave the following:

''8. If the jury find from the evidence that the two carloads of eggs in controversy in this case were reconsigned in St. Louis by or at the direction of W. B. Redfearn, or in his absence that such was done by Claude L. Gunn; and if the jury believes from the evidence that drafts, with bills of lading for said eggs attached, were discounted to the defendant bank with the knowledge or consent or acquiescence of B. W. Redfearn, then you will find a verdict for the defendant.

''9. If the jury believe from the evidence that by the previous course of dealing between the plaintiffs and B. W. Redfearn and the Mound City Produce Company the plaintiffs shipped goods to B. W. Redfearn on consignment in St. Louis and that such goods frequently were reconsigned in St. Louis to some other point and drafts drawn and bills of lading for the reconsignment attached thereto, and such drafts discounted with such bills of lading attached in the name of the Mound City Produce Company in the bank and drafts sent to the plaintiffs for the amount of such discount, drawn by the Mound City Produce Company on itself; and that before the shipment in controversy the plaintiffs knew that their goods which were reconsigned in St. Louis were frequently drawn against, and the drafts discounted and that the proceeds were going to the credit of the Mound City Produce Company; or, if without positive knowledge of these facts, you believe that at the time of the shipments in controversy the plaintiffs had knowledge of such facts and circumstances as would have caused a reasonable man to believe that their goods were being reconsigned and drawn against and that the proceeds were going to

the credit of the Mound City Produce Company; and if you further believe from the evidence that the eggs in controversy were so shipped on consignment and were reconsigned in St. Louis and drafts drawn on the party to whom they were reconsigned and bills of lading attached thereto and said drafts discounted with the defendant bank and that the bank had no knowledge to that time that the eggs belonged to plaintiff and that it paid the amount of said discount to the Mound City Produce Company at the time in cashier's checks, then your verdict in this case should be for the defendant bank.

"10. You are instructed that it is not necessary for the defendant to prove authority from plaintiffs to the Mound City Produce Company to reconsign the eggs and draw against them with bills of lading attached and discount the drafts, by direct and positive testimony but such authority may be established by circumstances and previous course of dealing between the parties and hence if the jury find from the evidence that by the previous course of dealing between the parties the Mound City Produce Company frequently reconsigned merchandise sent by plaintiffs to B. W. Redfearn on consignment and drew against the same and discounted the drafts with bills of lading attached and that the plaintiffs knew of such course of dealing prior to the shipment in controversy, or had knowledge of such facts and circumstances prior to that time as would have caused a reasonably prudent man to believe that merchandise sent by them on consignment to B. W. Redfearn was being reconsigned in the name of the Mound City Produce Company and drafts discounted in the name of said company against the shipment, then the jury will be authorized to infer from such a course of dealing that said Mound City Produce Company had authority to so dispose of the shipments in controversy and if they so find the verdict should be for the defendant.

"11. If the jury believe from the evidence that the plaintiffs sent the eggs in controversy to B. W. Redfearn on consignment and that the Mound City Produce Company took the eggs and consigned the same to Rowland & Co. in New York and drew drafts on Rowland & Co. for the eggs and discounted the drafts with the defendant bank, with bills of lading attached, and received the proceeds and sent to plaintiffs drafts upon itself for the proceeds of such discount and that plaintiffs knew that said Mound City Produce Company had so done and knew at the time the Mound City Produce Company was insolvent, or likely to become so before said drafts sent to plaintiffs could be collected, or that plaintiffs had knowledge of such facts and circumstances as would cause a reasonable man to believe that the Mound City Produce Company was insolvent, or likely to become so before said drafts sent to plaintiffs could be collected and that plaintiffs took such drafts so sent them and endorsed the same and transferred them to their own bank and received credit therefor, then you are instructed that these facts constituted a ratification of the act of the Mound City Produce Company in so disposing of plaintiffs' eggs, and if you so find the facts you will find for the defendant bank, notwithstanding you may further find that the Mound City Produce Company had not been authorized by plaintiffs to so dispose of the eggs and that the drafts sent plaintiffs were never paid, and that the plaintiffs were compelled to, and did, take the same up afterwards from their own bank.

"12. With reference to the question as to whether or not plaintiffs had notice of the insolvency of the Mound City Produce Company at the time referred to in the preceding instruction, the court instructs you that it is not necessary that such notice should be proved by direct and positive proof, but that the jury have a right to infer the same from circumstances; and.

if, in view of all the facts and circumstances in the case, you believe that at the time mentioned in said instruction the plaintiffs either knew the Mound City Produce Company was insolvent or would likely become insolvent before the drafts sent to plaintiffs for the two carloads of eggs in controversy could be collected, or that they had knowledge or notice of such facts and circumstances as would lead a reasonably prudent man to believe that said produce company was insolvent or would likely become so before said drafts could be presented for collection and paid, then you are instructed that such facts are equivalent to actual knowledge of insolvency and should be so treated by you, if you find the facts to so exist.''

The court gave the following of its own motion:

"13. The court instructs the jury that nine of your number have the power to find and return a verdict and if less than the whole of the number, but as many as nine agree upon a verdict, the same should be returned as the verdict of the jury, in which event all of the jurors who concur in such verdict shall sign same. If, however, all of the jurors concur in a verdict, your foreman alone may sign it.''

The following instructions were requested by plaintiffs and refused:

"1. By mentioning the 'burden of the proof' and 'preponderance of evidence,' the court intends no reference to the number of witnesses testifying concerning any fact or upon any issue in the case, but simply by way of briefly expressing the rule of law, which is that unless the evidence (as to such issue) appears in your judgment to preponderate in respect to its credibility in favor of the party to this action on whom the burden of proof (as to such issue) rests, then you should find against such party on said issue.

"2. The court instructs you that nine of your number have the power to find and return a verdict and if less than the whole of your number, but as many as

nine agree upon a verdict, the same should be returned as a verdict of the jury, in which event all of the jurors who concur in said verdict shall sign the same. If however, all of the jurors concur in the verdict your foreman alone may sign it.

"3. Should you find from the evidence, all the facts and circumstances, that the bank took the drafts to which the bills of lading were attached for collection only, then your verdict should be for the plaintiffs.

"4. You are instructed that before you can find the plaintiffs ratified the acts of the Mound City Produce Company in drawing drafts upon their eggs and placing said drafts in the Jefferson Bank to its own credit, you must be satisfied that the plaintiffs with full knowledge of all that was done consented to and approved of the same. Ratification is an intention to stand by or adopt what has been previously done with authority and it must appear such action or approval or intention to stand by and adopt what has been done without previous authority is done intelligently and not infer a mistake. Should you find from the evidence, the facts and circumstances, the plaintiffs were mistaken about any material fact or facts connected with the disposition of their eggs, such as a belief their agents had sold them when in fact they had not, that they believed the Mound City Produce Company was solvent when in fact it was not, then the plaintiffs could not be said to have ratified the acts of the Mound City Produce Company by anything they did while laboring under such mistaken belief. The court does not undertake to say, or in any way intimate what the evidence does or does not disclose. That is exclusively for you to do. The burden of proving such ratification, if it existed, is on the defendant.

"5. Should you find from the evidence that the plaintiffs received the drafts of the Mound City Produce Company upon itself and had them deposited to

their own credit in their bank at Fredonia, Kansas, and then the drafts were afterwards charged back to the plaintiffs by the said bank at Fredonia, these acts would not necessarily constitute a ratification on the part of the plaintiffs.

"6. Should you find from the evidence that the defendant had knowledge of the character of the accommodation or kiting drafts drawn by the Mound City Produce Company upon the Fredonia Produce Company and deposited with the defendant bank, or that the drafts were received under such circumstances as to put a reasonably prudent man on inquiry as to their character, then the bank could not have been misled by any acts of the plaintiff in relation to such paper nor would the bank be warranted in extending credit to the Mound City Produce Company under the belief that the plaintiffs would continue to pay said drafts.

"7. Should you find from the evidence that prior to the failure of the Mound City Produce Company, the plaintiffs had honored a large number of accommodation drafts drawn by the Mound City Produce Company upon the plaintiffs, this would not obligate the plaintiffs to continue the payments of such paper, but they had the right at any time to discontinue such payment."

This case has returned on a second appeal and as we gave a complete statement of the numerous, complicated and important facts in our first opinion and ruled upon all the main propositions of law involved, we will not repeat the statement or discussion. The points raised on this appeal relate to rulings on offers of testimony and requests for instructions.

GOODE, J. (after stating the facts).—The first assignment of error is the refusal of the court, on motion of plaintiff, to discharge the special jury which had been summoned to try the case. The application and

order for the special venire are not contained in the
record and we know not for what reason the court was
asked to have it summoned or whether defendant's ap-
plication was opposed. The record shows no objection
by plaintiffs to the procedure until after *voir dire*
examination of the members of the panel, the peremp-
tory challenges by the parties and statements by coun-
sel to the panel selected as the jury of the facts relied on
for the cause of action and the defense. The motion to
discharge the special jury said the statements of counsel
and the pleadings showed there were "no intricate in-
volved calculations calling for unusual preparation or
skill, but the issues are based upon the questions of
fact as to knowledge, title and good faith." In the
motion for new trial we find the charge made that the
special jury was not fairly and impartially selected,
and instead was "selected with a view to contain the
greatest possible number of presidents and secretaries
of various corporations and the greatest possible num-
ber of German inhabitants so the defendant might ob-
tain the benefit of any bias arising from either race
or corporation prejudice." The record omits the *voir
dire* examination of the panel and there is nothing
before us to support the accusation of policy in sum-
moning the jury and the probability of a bias in the
members unfavorable to plaintiffs. As no abuse of the
court's discretion to try the cause by the special jury
appears, the exception taken to the overruling of the
motion to discharge said jury will be disallowed. [R.
S. 1899, sec. 6566; Eckrich v. Transit Co., 176 Mo. 621,
75 S. W. 755.]

The action is for damages for the conversion by
defendant of the two carloads of eggs belonging to
plaintiffs, shipped by them from Fredonia, Kansas, to
B. W. Redfearn in St. Louis, and accompanied by let-
ters or invoices to said Redfearn in the following form:

"INVOICE OF SHIPMENT.

"To B. W. Redfearn,

927 North Fourth St., Saint Louis, Mo.

306 cases of eggs stenciled F, from Fredonia Produce Company, Fredonia, Kansas, July 14, 1904. 306 cases of eggs, current receipts, transferred and topped —excelsior and extra flats. Drafts $—. No. —. Terms, Cash on delivery of goods. Shipped via Frisco."

The second invoice was precisely like the above except the date, which was July 12, 1904, and the shipment was for 276 cases of eggs. Plaintiffs offered the invoices in evidence on the theory that the expression "terms cash on delivery of the goods" was, in effect, a limitation on the authority of Redfearn to pass the title to the property by sale or reconsignment except on receipt of the price in cash for plaintiffs. This was true as between plaintiffs and Redfearn, unless the course of business pursued by them had been in disregard of restrictions in the invoices of prior shipments. The invoices of the shipments in dispute were incompetent against defendant, for it never had seen them and hence knew nothing of the supposed restriction of the authority of Redfearn to dispose of the eggs, and as consignee in the bills of lading taken by plaintiffs from the railway company which carried the property from Fredonia to St. Louis, he might be dealt with as having complete power to pass the title. The only cloud on the title to the eggs acquired by defendant arose in this way, as will be seen by reading the former statement and opinion: The Mound City Produce Company received the eggs at St. Louis, reconsigned them to Rowland & Company in New York, took bills of lading from the Wabash Railroad Company, over which road the eggs were shipped to New York, attached these bills of lading to a draft drawn on Rowland & Company, and defendant discounted the draft. If this transaction had occurred between the

bank and Redfearn, whom plaintiffs admit they had expressly authorized to do such acts, there would have been no doubt about the title to the eggs passing with the bills of lading. But as defendant dealt with the Mound City Produce Company, the corporation Redfearn controlled, instead of with him personally, and as plaintiffs denied said corporation had been authorized to transact business for them, it was necessary for defendant, in order to maintain its title and escape a judgment for having converted the property, to establish one of several facts regarding the transmission of the eggs to Rowland & Company for sale in, New York and the assignment to defendant of the draft for their proceeds, with bills of lading attached, namely: that said acts, though done in the name of the Mound City Company were attended to or ordered by Redfearn, or Gunn or W. P. Johnson, who concededly had power to act in such affairs in Redfearn's absence, or that plaintiffs had expressly authorized the Mound City Company likewise to act as their agent, which they denied, or that authority had been conferred on it by a previous course of dealing acquiesced in by plaintiffs, or that, after all material facts were known, plaintiffs had ratified the transaction between the Produce Company and defendant by depositing to their credit in the Fredonia Bank the draft drawn on itself by the Mound City Produce Company and transmitted to plaintiffs with a letter showing it was sent to pay for the eggs. As those issues were the essential issues, the invoices with which plaintiffs accompanied the shipments of eggs to Redfearn were not relevant.

Complaint is also made of the exclusion of 159 of the "kiting" drafts for many thousands of dollars, which had been drawn by the Mound City Company and B. W. Redfearn on the Fredonia Produce Company during seven or eight months prior to and wholly unconnected with the transactions in controversy, discounted with defendant bank and afterwards paid by

plaintiffs on presentation. As is shown in the former opinion, plaintiffs had maintained the credit of Redfearn for about a year by honoring drafts of this character drawn by him and discounted with defendant. If the Mound City Company needed money it would draw such a draft on plaintiffs, get it cashed by defendant, which would send the draft to Fredonia for payment and plaintiffs would pay it, being remimbursed by other drafts drawn by the Produce Company on itself and transmitted to plaintiffs. The testimony in regard to this course of business was competent as against plaintiffs to affect them with notice of the insolvent condition of the Produce Company at the time they accepted the draft on itself for the two carloads of eggs in question and thereby make good the alleged ratification by said acceptance of the Produce Company's disposition of the eggs as their agent. The bearing of the testimony as regards the defendant is altogether different. That these 159 "kiting" drafts had been drawn on and honored by plaintiffs through many months, had no tendency in itself to prove defendant knew the Mound City Produce Company was insolvent. For aught that appears defendant had no knowledge of the real nature of the transactions or reason to believe the drafts were a scheme used by plaintiffs and Redfearn to maintain the Mound City Produce Company's financial condition, or were not drawn and paid in the usual course of exchange. As we pointed out in the previous opinion, the failure of the Mound City Company was caused by plaintiffs suddenly refusing to honor $5500 of these drafts which had been discounted with the defendant and accepted by it on the faith of many previous transactions, in all of which plaintiffs had paid the drafts when presented. No error was committed to plaintiffs' prejudice in excluding the drafts, for standing alone they threw no light on the issues, and explained by the circumstances connected

with them conduced to prove defendant was ignorant of the insolvency of the Produce Company.

The instructions given and refused will go with the opinion. On comparing those given with the former opinion they will be perceived to declare the law in conformity to it. The first refused request of plaintiffs was covered in part by a charge given by the court, and the other paragraph defined a phrase "preponderance of the evidence," not used elsewhere in the instructions. The second refused request had no evidence to rest on and was opposed to the former decision. The third, in so far as sound and not a comment on facts, was covered by the fourth instruction granted for plaintiffs. The fourth refused request was a comment on two facts singled out from various facts bearing on the question of ratification. The fifth and sixth sought to introduce the alien and immaterial issues of whether defendant had been misled by plaintiffs paying many kiting drafts not connected with the eggs in dispute, and of whether plaintiffs were bound to continue to pay such drafts. The evidence regarding those occurrences was admitted only as proof of plaintiffs' knowledge of the Produce Company's insolvency and not to establish the affirmative of the hypothesis mentioned in the refused requests.

The judgment is affirmed. All concur.